**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

SEAN T. WILEY,

                Plaintiff,

    v.

VERONICA FERNANDEZ, et al.,

                Defendants.

No. 9:19-CV-652
(GTS/CFH)

---

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| SEAN T. WILEY<br>09137424<br>Gilmer Federal Correctional Institution<br>P.O. Box 6000<br>Glenville, West Virginia 26351<br>Plaintiff pro se | |
| Attorney for the<br>United States of America<br>P.O. Box 7198<br>100 South Clinton Street<br>Syracuse, New York 13261<br>Attorney for defendants | RANSOM P. REYNOLDS, ESQ.<br>Assistant United States Attorney |

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Sean T. Wiley ("plaintiff"), who was at all relevant times in the custody of the Bureau of Prisons ("BOP"), brings this action seeking relief for violations of his rights under the Federal Tort Claims Act ("FTCA") and the First and Eighth

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Amendments, against Warden Veronica Fernandez ("Fernandez"), Lieutenant ("Lt.") Gianelli ("Gianelli"), Lt. Paul Shipman ("Shipman"), Correction Officer ("C.O.") D. Bowman ("Bowman"), and Hospital Administrator Kim Berdo ("Berdo") (collectively, "defendants"). See Dkt. No. 13 ("Am. Compl.").[2]  Presently before the Court is defendants' partial Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). See Dkt. No. 48-1. Plaintiff filed a response. See Dkt. No. 52. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background
### A. Plaintiff's Factual Assertions[3]

Following an unrelated incident that occurred on November 7, 2017, plaintiff was placed in the Special Housing Unit ("SHU") at Ray Brook Correctional Facility ("Ray Brook"). See Am. Compl. at 7, 25. On February 14, 2018, defendant Bowman was escorting plaintiff from the shower back to his cell. See id. at 9. Then, "out of no[]where Officer Bowman totally unprovoked shoved and attempted to push [plaintiff] into [his] cell[.]" Id. at 10. Plaintiff's hands were cuffed behind his back when Bowman threw his elbow into plaintiff's back, sending plaintiff "face first into the wall[.]" Id. The next day, defendant Gianelli and nonparty Lt. Sarles escorted plaintiff in a wheelchair from

---

[2] Plaintiff also names the United States of America as a defendant. See Am. Compl. The United States did not join in the partial Motion to Dismiss. See Dkt. No. 48-1 at 1.

[3] Plaintiff raises four claims against defendants: (1) a claim under the Federal Tort Claims Act; (2) an Eighth Amendment deliberate indifference claim; (3) an Eighth Amendment excessive force claim; and (4) a First Amendment retaliation claim. See Am. Compl. at 17-18. Defendants motion to dismiss relates only to plaintiff's Eighth Amendment excessive force and First Amendment retaliation claims. See Dkt. No. 48-1 at 5.

2

medical to his cell. See id. at 3. As a result of the February 14, 2018, incident, plaintiff was unable to stand on his own and place his hands through the food slot of his cell door to have his handcuffs removed. See id. Gianelli and Sarles entered plaintiff's cell to remove the handcuffs. See id. Unprovoked, Gianelli "violently and forcefully" pushed, twisted, and shoved plaintiff's "now [injured] back causing [extreme] and intense pain, now as [] plaintiff cr[ie]s out in pain and begs and [pleads] with lieutenant Gianelli to cease and stop . . . ." Id. Gianelli told plaintiff, "you better not even think of filing anything against my staff because if you do I'll get you! . . . Consider this a warning!" Id. (quotation marks and emphasis omitted).

On April 4, 2018, nonparty Lt. Strack informed plaintiff that the investigation into the unrelated November 2017, incident was being closed. See Am. Compl. at 7. On April 6, 2018, "while awaiting [his] release from the Special Housing Unit," plaintiff informed nonparty Lt. Straesser "about the fake evidence and false statement [that] was used against [him] and how [he] now look[ed] forward to being release[d] soon[.]" Id. Plaintiff's investigation into the November 2017, incident was officially closed on April 20, 2018. See id. At that time, plaintiff had "no investigations on going, and no incident reports issued nor pending," but he had administrative remedies pending concerning denial of medical care, staff intimidation and threats, and the February 14, 2018, assault. Id. (emphasis omitted). On May 12, 2018, plaintiff was informed he would not be released from the SHU "and was being put in for a transfer." Id. On May 25, 2018, plaintiff was "informed by [his] unit team that [his] transfer request to Grand Prairie Texas transfer center had been den[i]ed" because "[i]t was Grand Prairie's belief that a transfer was [not] merited and that [plaintiff] [would] be released from (SHU) back to the

compound." Id. at 7-8.  On May 28, 2018, plaintiff informed defendant Fernandez that he had been in the SHU for seven months and cleared of any guilt and "remind[ed] her that [he] [was] the victim of a vicious and malicious assault by her staff[.]"  Id. at 8.  Fernandez told plaintiff that another transfer request was being considered but that if it was denied, he would be released to the compound.  See id.  On May 29, 2018, plaintiff filed an administrative remedy request complaining of "[r]etaliation and Illegally and P[]unitively being placed in the Special Housing Unit[.]"  Id.  On June 6, 2018, defendant Shipman told plaintiff that defendant Fernandez wants Shipman to "do something with Inmate Wiley and all those remed[ies][,]" so Shipman was going to "spice it up and get [plaintiff] on [his] way[.]"  Id. (quotation marks omitted).  On June 12, 2018, plaintiff received Shipman's incident report alleging insolence and disruptive conduct.  See id. at 8, 29.  Plaintiff "was [] found guilty of this incident report and then lost earn[ed] good time credit, and [] got put in and transferred from Raybrook."[4]  Id. at 8.

### II. Motion to Dismiss Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted."  When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor."  Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation

---

[4] Plaintiff does not specify who put in for his transfer or when he was officially transferred.  See generally Am. Compl.

4

marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

5

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally." (internal quotation marks and citations omitted)).

### III. Exhaustion

#### A. Legal Standard

The Prison Litigation Reform Act ("PLRA") states in pertinent part that "[n]o action shall be brought with respect to prison conditions under . . . any [] Federal law, by a prisoner confined in any jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages.  See id. at 524. Exhaustion is an affirmative defense that the defendants must raise, and once raised, the defendants bear the burden of providing that administrative remedies have not been exhausted.  See Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999).  Accordingly, "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016)

(quoting Jones v. Bock, 549 U.S. 119, 216 (2007)).  "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." Id.  "In order to satisfy the exhaustion requirement, a plaintiff must complete the administrative review process in accordance with the applicable procedural rules of the facility" in which he or she is incarcerated.  Hale v. Rao, 768 F. Supp. 2d 367, 376 (N.D.N.Y. 2011)

The BOP's Administrative Remedy Program ("ARP") is a four-step process for resolving inmate complaints.  See generally 28 C.F.R. § 542.  An inmate must first "present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue[.]"  28 C.F.R. § 542.13(a).  If an issue cannot be resolved informally, an inmate must submit a "formal written Administrative Remedy Request, on the appropriate form (BP–9), [] 20 calendar days following the date on which the basis for the Request occurred[]" to the Warden of the facility in which they are housed.  28 C.F.R. § 542.14(a).  Next, "[a]n inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."  28 C.F.R. § 542.15(a).  Finally, "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." Id.

**B.  Analysis**

Defendants argue that plaintiff failed to exhaust his administrative remedies. See Dkt. No. 48-1 at 16.[5] Specifically, defendants contend that plaintiff "filed several administrative remedies while in BOP custody, many of which relate to the issues raised in the Amended Complaint[,]" but because three of them were not fully exhausted—administrative remedies No. 946801, No. 932361, and No. 939166—plaintiff failed to fully exhaust his administrative remedies. Id. at 17.[6]

In response, plaintiff primarily addresses the merits of his claims. See Dkt. No. 52 at 1-6. As to exhaustion, he summarily states that "all of these constitutional claims brung [sic] forward in this civil rights complaint have been fully exhausted[,]" and cites to a number of exhibits. Id. at 2. Attached to plaintiff's amended complaint and response are exhibits from three administrative remedies: No. 946801, No. 935441, and No. 946962. See Am. Compl. at 27-29, 43, 48; Dkt. No. 52 at 11, 13, 15-16.[7] It is unclear whether plaintiff exhausted his administrative remedies because he appears to have grieved defendants' underlying conduct in administrative complaints that defendants do not address. See Am. Compl. at 27, 48; Dkt. No. 52 at 11, 13, 15-16; see Johnson v.

---

[5] The Court's citations to defendants' memorandum of law are to the pagination generated by the Court's electronic filing system, and not to that of the individual document.

[6] Defendants submit legal assistant for the BOP Cheryl Magnusson's declaration, and plaintiff's SENTRY Administrative Remedy Record, in support of their motion. See generally Dkt. No. 48-2.

[7] In assessing a motion to dismiss, the court may rely upon "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted); see also Keyes v. Annucci, No. 9:18-CV-0372 (GTS/DJS), 2019 WL 4602240, at *7 n.1 (N.D.N.Y. Sept. 23, 2019) (collecting authority and explaining, in detail, that a district court assessing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or 12(c) may consider any written instrument attached to the complaint as an exhibit and documents incorporated in it by reference). Additionally, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (citing Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion."). As the undersigned does not reach the exhaustion issue, it is not necessary to assess whether the exhibits attached to plaintiff's response can be properly considered.

Testman, 380 F.3d 691, 697 (2d Cir. 2004) (explaining that to properly exhaust administrative remedies "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."). However, because plaintiff's First Amendment and Eighth Amendment excessive force claims fail on the merits, as will be discussed below, the Court need not determine whether plaintiff exhausted his administrative remedies related to those claims.[8]

### IV. Bivens Claims

42 U.S.C. § 1983 creates a specific damages remedy for plaintiffs whose constitutional rights are violated by state officials. See Ziglar v. Abbasi, 137 S. Ct. 1843, 1854 (2017). Congress has not created a similar statutory remedy for such claims against federal officials acting under the color of federal law. See id. In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court of the United States decided that "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." Id. (citing Bivens, 403 U.S. at 397). The Court decided that because "Congress had not foreclosed a damages remedy in 'explicit' terms and that no 'special factors' suggested that the Judiciary should

---

[8] Ordinarily, "[w]hen either non-exhaustion or the availability of the grievance procedure is not clear from the face of the complaint, the court should [] convert the motion to summary judgment 'limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, [and] whether remedies were available. . . .'" Wilson v. Bolt, No. 9:18-CV-00416 (DNH/TWD), 2019 WL 5197335, at *5 (N.D.N.Y. May 28, 2019), report and recommendation adopted, 2019 WL 3561742 (N.D.N.Y. Aug. 6, 2019), appeal dismissed (Nov. 18, 2019) (quoting Stevens v. City of New York, No. 12-CV-1918 (JPO/JLC), 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012). However, because the undersigned is recommending granting defendants' partial Motion to Dismiss on the Bivens issue, converting the motion is unnecessary. See id.

9

'hesitat[e]' in the face of congressional silence. . . . it could authorize a remedy under general principles of federal jurisdiction." Id. (quoting Bivens, 403 U.S. at 396-97). Since then, the Supreme Court has extended Bivens in two cases involving constitutional violations: (1) Davis v. Passman, 442 U.S. 228 (1979) (extending Bivens under the Fifth Amendment's Due Process Clause); and (2) Carlson v. Green, 446 U.S. 14 (1980) (extending Bivens to the Eighth Amendment's Cruel and Unusual Punishments Clause for a prison's failure to provide adequate medical treatment). See id. at 1854-55. Assessing whether to extend Bivens requires a two-step inquiry where the district court must determine whether (1) the case presents a "new context"; and (2) there are "special factors counselling hesitation." Id. at 1857 (quoting Carlson, 446 U.S. at 18) (internal quotation marks omitted).

As to whether a case presents a new context, a court must determine whether "the case is different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. Ziglar, 137 S. Ct. at 1859. The Supreme Court provided a non-exhaustive list of ways in which a case could "differ in a meaningfully way":

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 1860. Next, "to be a special factor counselling hesitation, a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1858 (internal quotation marks omitted). The Supreme Court has explained that "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling

10

hesitation." Id. at 1865.  Specifically, the Court referenced the PLRA, stating that "it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. . . . [Therefore,] [i]t could be argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment." Id.

### A. First Amendment Retaliation

Plaintiff alleges that defendants violated the First Amendment by retaliating against him after he filed administrative remedies complaining of staff misconduct and SHU confinement without cause.  See Am. Compl. at 7-8.  Specifically, plaintiff alleges he was kept in the SHU without any justification, and after he complained, defendant Shipman brought a falsified incident report to justify plaintiff's SHU assignment.  See id.

Defendants argue that plaintiff's retaliation claim presents a new context for a Bivens claim because "[t]he Supreme Court has never recognized a Bivens remedy in this or any First Amendment context."  Dkt. No. 48-1 at 8.  As to "special factors counsel[ing] hesitation," defendants argue that "[t]he BOP's Administrative Remedy Program was available to [plaintiff] to press his retaliation" claim.  Id. at 10-11.  Additionally, defendants note that plaintiff had available to him a petition for habeas relief under 28 U.S.C. § 2241.  See id. at 11.  Next, defendants argue that "because Congress has never created a parallel [section 1983] action against federal officials generally or BOP officials specifically[,]" "this Court should not infer a remedy for [plaintiff's] claims here."  Id. at 12, 14.  Finally, defendants argue that extending Bivens to plaintiff's claim would overshadow the "professional judgment of prison

11

administrators[.]" Id. at 15. (quoting Overton v. Barzzetta, 539 U.S. 126, 132 (2003)).  In response, plaintiff does not address the Bivens issue.  See Dkt. No. 52 at 2-3.

### 1. Analysis

The Supreme Court has "never held that *Bivens* extends to First Amendment claims."  Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012); see also Wilson v. Bolt, No. 9:18-CV-00416 (DNH/TWD), 2019 WL 5197335, at *6 (N.D.N.Y. May 28, 2019), report and recommendation adopted, 2019 WL 3561742 (N.D.N.Y. Aug. 6, 2019), appeal dismissed (Nov. 18, 2019) ("The Supreme Court has never recognized a First Amendment right to be free from retaliation as a cognizable *Bivens* claim.").  As such, plaintiff's First Amendment claim presents a new Bivens context.

Agreeing with "the vast majority of courts that have addressed the effect of *Ziglar* on extending *Bivens*[,]" this Court has declined to

> extend *Bivens* to encompass federal inmates' First Amendment retaliation claims because such claims arise in a new context and the special factors analysis dictates hesitation in applying *Bivens* to such claims in light of the fact that federal inmates have alternative remedies on which they can rely, including the Bureau of Prisons administrative remedy process and a writ of *habeas corpus*, as well as the fact that Congress did not provide for such a damages remedy for federal inmates when it enacted the Prisoner Litigation Reform Act.

Widi v. Hudson, No. 9:16-CV-1042 (FJS/DJS), 2019 WL 3491250, at *3-4 (N.D.N.Y. Aug. 1, 2019); see also Wilson, 2019 WL 5197335, at *7 (declining to extend Bivens to a First Amendment retaliation claim); Sabir v. Williams, No. 3:20-CV-0008 (VAB), 2020 WL 3489522, at *5 (D. Conn. June 26, 2020) (same); Negron v. United States, No. 19-CV-05442 (PMH), 2020 WL 5634304, at *7 (S.D.N.Y. Sept. 21, 2020) (declining to extend Bivens to a "First Amendment free speech claim based upon the allegedly retaliatory prison transfer."); Akande v. Philips, No. 17-CV-01243, 2018 WL 3425009, at

12

*8 (W.D.N.Y. July 11, 2018) ("[N]ationwide, district courts seem to be in agreement that . . . prisoners have no right to bring a *Bivens* action for violation of the First Amendment.") (citations omitted).  Therefore, given the fact that plaintiff has other remedies available to him, along with the fact that Congress has not provided for such a remedy, the undersigned recommends following the rationale of the Second Circuit courts reviewing this question by declining to extend Bivens and granting defendants' partial motion to dismiss on plaintiff's First Amendment retaliation claim.

### B. Eighth Amendment Excessive Force

Plaintiff brings an Eighth Amendment excessive force claim for the alleged February 15, 2018, assault and defendant Gianelli's threats.  See Am. Compl. at 3. Defendants first argue that "[t]he Supreme Court has never recognized a *Bivens* remedy for a claim arising from excessive force or threats by prison officials"; thus, plaintiff's claim presents a new Bivens context.  Dkt. No. 48-1 at 9.  Second, defendants argue that there are numerous factors that should counsel hesitation in extending Bivens to plaintiff's claim:  (1) the BOP's ARP, (2) the PLRA, and (3) prison administrations' autonomy over the safety and security of their institutions.  See id. at 10-16.

### 1. Analysis

The Court must first decide whether plaintiff's claim differs in any meaningful way from the cases in which the Supreme Court has allowed a Bivens remedy.  See Ziglar, 137 S. Ct. at 1858.  "It is crystal clear that the Supreme Court does not desire any extension of *Bivens*, and where a proposed constitutional claim is presented in a context not previously recognized by the Court, a whole host of reasons will now counsel hesitation and, indeed, a full stop."  Walker v. Schult, 463 F. Supp. 3d 323, 331-

13

32 (N.D.N.Y. 2020), appeal docketed, No. 20-2415 (2nd Cir. July 30, 2020). "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020).

The Supreme Court has recognized a Bivens remedy under the Eighth Amendment "in circumstances where the allegation was that federal prison officials withheld proper medical attention, resulting in the death of an inmate." Walker, 463 F. Supp. at 331 (citing Carlson, 446 U.S. at 17). This Court has explained that an Eighth Amendment conditions of confinement claim was not a "new context" because there was not a "material difference, in the prison context, between conditions of confinement and medical care." Id.; see Wilson v. Seiter, 501 U.S. 294, 303 (1991).

Here, plaintiff's Eighth Amendment claim is not about medical care or conditions of his confinement, but excessive force. See Am. Compl. at 3. This Court has not addressed whether Bivens should be extended to an Eighth Amendment excessive force claim. However, the Eastern District of New York has, determining that (1) "there are meaningful differences between [the] plaintiff's allegations of excessive handcuffing and the indifference to serious medical needs at issue in Carlson[,]" and (2) "[s]ince no Supreme Court decision has ever extended Bivens to encompass the specific context presented by plaintiff's excessive force claims, this cause of action presents a new Bivens context." Ojo v. United States, No. 16-CV-4112 (MKB/LB), 2019 WL 3852391, at *10 (E.D.N.Y. Aug. 15, 2019), report and recommendation adopted, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019). The Western and Southern Districts of New York have similarly determined that "there are also meaningful differences between [the]

[p]laintiff's allegations of severe physical abuse, and the indifference to medical needs at issue in *Carlson*." Akande, 2018 WL 3425009, at *9; Ramirez v. Tatum, No. 17-CV-7801 (LGS), 2018 WL 6655600, at *5 (S.D.N.Y. Dec. 19, 2018) ("The Supreme Court has recognized only three *Bivens* contexts, none of which include retaliation or excessive force."). Here, plaintiff's claim arises in a "new context" because there are meaningful differences between conditions of confinement and medical indifference claims and plaintiff's excessive force claim. See Am. Compl. at 3; see, e.g., Farmer v. Brennan, 511 U.S. 825, 835 (1994) (citations and internal quotation marks omitted) (explaining that "application of the deliberate indifference standard is inappropriate in one class of prison cases: when officials stand accused of using excessive physical force." Accordingly, excessive force claims require a showing of "more than indifference, deliberate or otherwise. The claimant must show that officials applied force maliciously and sadistically for the very purpose of causing harm[.]")

As plaintiff's claim presents a new context, the Court "must proceed to the next step and ask whether there are factors that counsel hesitation." Hernandez, 10 S. Ct. at 743. The threshold for what counsels hesitation "is remarkably low[,]" and the inquiry is whether a court will "pause even to consider" a specific factor. Arar, 585 F.3d at 574. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." Ziglar, 137 S. Ct. at 1865. The alternative remedy "need not be perfectly congruent." Minneci v. Pollard, 565 U.S. 118, 129 (2012). In reviewing alternative remedies in inmate cases, courts consider the PLRA, administrative exhaustion regulations, and the FTCA. See Oneil v. Rodriguez, No. 18-CV-3287 (AMD/LB), 2020 WL 5820548, at *4 (E.D.N.Y. Sept. 30, 2020).

15

Following the Supreme Court's extension of Bivens to an Eighth Amendment medical indifference claim in Carlson, Congress created the PLRA.  See Ziglar, 137 S. Ct. at 1865.  In doing so, "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs."  Id. "Congress' legislative action in the area of prisoners' rights through the PLRA, including by requiring an administrative process, weighs against extending a *Bivens* remedy to the plaintiff's claims."  Oneil, 2020 WL 5820548, at *4 (declining to extend Bivens to a plaintiff's "First [A]mendment claims, equal protection claims, and excessive force claims under the Eighth Amendment[,]" and collecting cases that have found that the PLRA counsels hesitation); but see Scott v. Quay, No. 19-CV-1075 (MKB/SMG), 2020 WL 8611292, at *7 (E.D.N.Y. Nov. 16, 2020) (declining "to infer what views Congress may have with respect to extending *Bivens* from its failure to pass a law that either provides or precludes a *Bivens*-type remedy for violations of constitutional rights."). Additionally, this Court has acknowledged that "[a] number of district courts considering the availability of alternative remedies at step two of the analysis have suggested that the BOP ARP arguably provides an alternative remedy."  Wilson, 2019 WL 5197335, at *7 (collecting cases); Widi, 2019 WL 3491250, at *4 ("[F]ederal inmates have alternative remedies on which they can rely, including the Bureau of Prisons administrative remedy process and a writ of *habeas corpus* . . . .")

As to the FTCA, Carlson explained that there is "nothing in the Federal Tort Claims Act . . . or its legislative history to show that Congress meant to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations." 446 U.S. at 19.  However, Ziglar made clear that "the legal landscape has changed

since *Carlson*," Turkmen v. Ashcroft, No. 02-CV-02307 (DLI/SMG), 2021 WL 4099495, at *6 (E.D.N.Y. Sept. 9, 2021) such that "expanding the *Bivens* remedy is now a disfavored judicial activity." Ziglar, 137 S.Ct. at 1857 (citation and quotation marks omitted).  Therefore, some district courts have reasoned that "the *Carlson* holding concerning FTCA no longer has 'vitality' in light of *Ziglar*." Turkmen, 2021 WL 4099495, at *6; see Abdoulaye v. Cimaglia, No. 15-CV-4921 (PKC), 2018 WL 1890488, at *7 (S.D.N.Y. Mar. 30, 2018) (acknowledging that, "[a]lthough the Carlson court acknowledged the availability of an FTCA remedy before allowing that action to proceed, the Ziglar court noted that Carlson, like the other previously approved Bivens actions, 'might have been different if [it] were decided today[.]'") (citations omitted). However, even if a case "might be different if [it] were decided today," Carlson is "settled law." Ziglar, 137 S.Ct. at 1856-57.

   "The Second Circuit has not yet decided whether, in the wake of [Ziglar], the availability of an FTCA action precludes a *Bivens* remedy." Scott, 2020 WL 8611292, at *8 (collecting cases "within the Second Circuit [that] have similarly concluded that *Carlson*'s analysis of adequate alternative remedies cannot survive [Ziglar] and dismissed *Bivens* claims because the FTCA provides an adequate alternative remedy."); see also Abdoulaye, 2018 WL 1890488, at *7 (concluding that "the existence of the FTCA as a potential remedy counsels hesitation" in light of Ziglar); but see Bueno Diaz v. Mercurio, 442 F. Supp. 3d 701, 710 (S.D.N.Y. 2020) ("It has been repeatedly emphasized that an FTCA claim is simply not a substitute for a *Bivens* action") (quotation marks omitted) (citing Bush v. Lucas, 462 U.S. 367, 378 (1983); Wilkie v. Robbins, 551 U.S. 537, 553 (2007); Linlor v. Polson, 263 F. Supp. 3d 613, 621 (E.D.

Va. 2017)); see also Powell v. United States, No. 19-CV-11351, 2020 WL 5126392, at *10 (S.D.N.Y. Aug. 31, 2020) ("[T]he FTCA facilitates only liability in tort against the United States itself, . . . whereas the *Bivens* remedy vindicates violations of constitutional rights by federal employees . . . . The FTCA standing on its own does not give the Court reason to hesitate in extending *Bivens*.") (citations and quotation marks omitted).

As the bar for what "counsels hesitation" is "remarkably low," Arar, 585 F.3d at 574, the undersigned agrees that "post-[Ziglar], the FTCA as a potential remedy counsels hesitation in extending a *Bivens* remedy[.]" Scott, 2020 WL 8611292, at *9 (quoting Abdoulaye, 2018 WL 1890488, at *7) (quotation marks omitted); see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001) ("Since *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants."). Accordingly, the undersigned recommends granting defendants' partial motion to dismiss as to plaintiff's Eighth Amendment excessive force claim.

### V. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that defendants' partial Motion to Dismiss (Dkt. No. 48-1) be **GRANTED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[9]

    Dated: November 24, 2021
          Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).