## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

SEAN T. WILEY,

                           Plaintiff,

      v.

UNITED STATES OF AMERICA,                 Civil Action No.
VERONICA FERNANDEZ AND            9:19-CV-652 (GTS/CFH)
KIM BURDO,

                         Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMEMNT

---

CARLA B. FREEDMAN
United States Attorney
Northern District of New York


By:    Ransom P. Reynolds
       Assistant United States Attorney
       Bar Roll No. 512035

# TABLE OF CONTENTS

Preliminary Statement ............................................................................................................1

Facts ........................................................................................................................................2

Summary Judgment Standard ..................................................................................................4

Argument .................................................................................................................................5

    I.   Plaintiff's Eighth Amendment Claims Against Fernandez and
        Burdo Are Not Cognizable After *Egbert* ...............................................................5

        A.  Wiley's constitutional claims against Fernandez and Burdo present a new context .....6

        B.  Special Factors and Alternative Remedies Counsel Against
             Recognizing a Remedy Here ........................................................................8

            A.  Alternative remedial structures are available in this new context ..........................9

            B.  Separation of powers and Congressional Inaction ................................................10

            C.  The Prison Litigation Reform Act ........................................................................11

            D.  The Burden on Government Operations Systemwide ...........................................12

    II.  Defendants Burdo and Fernandez are Entitled to Summary Judgment on
        Plaintiff's Deliberate Indifference Claim ....................................................................13

        A.  There is Insufficient Evidence that Either Burdo or Fernandez
            Acted With Deliberate Indifference ..............................................................13

        B.  There is Insufficient Evidence that Fernandez was Personally
            Involved in the Alleged Constitutional Violation ........................................15

    III. This Court Lacks Subject Matter Jurisdiction Over Plaintiff's FTCA claim
        against the United States Because the Conduct Alleged Falls Within the
        FTCA's Discretionary Function Exception ..................................................................17

        A.  Legal Standard ....................................................................................................17

        B.  Defendant Burdo's actions were discretionary in nature ....................................19

        C.  Burdo's decision was grounded in public policy considerations ..........................20

IV. To the Extent that it is Not Barred by the Discretionary Function Exception,
the United States is Entitled to Summary Judgment on Plaintiff's FTCA Claim..............21

Conclusion ....................................................................................................................................23

**PRELIMINARY STATEMENT**

*Pro se* Plaintiff Sean T. Wiley ("Plaintiff" or "Wiley") brings this action pursuant to *Bivens*[1] and the Federal Tort Claims Act ("FTCA") alleging that Defendants were negligent in their provision of medical care and deliberately indifferent to his serious medical needs while he was an inmate at the Federal Correctional Institution in Ray Brook, New York ("FCI Ray Brook"). Amended Complaint, *generally* (Dkt. No. 13).

Plaintiff's FTCA claim against the United States and his *Bivens* claim against Health Service Administrator ("HSA") Kim Burdo and Warden Veronica Fernandez are all based on his allegation that he was denied over-the-counter ("OTC") pain medication for treatment of back pain for a few weeks. He alleges that Burdo implemented an "illegal policy," applicable only to him, that required him to return empty OTC medication bottles before being provided additional OTC medications. [2]  Plaintiff similarly alleges that Warden Fernandez was deliberately indifferent to his serious medical need by allowing HSA Burdo to implement this policy.  Ransom Reynolds Declaration ("Reynolds) Ex. D at p. 35; Dkt. No. 13 at 5–6, 12–13.

Burdo and Fernandez are entitled to summary judgment dismissing Plaintiff's *Bivens* claim because (1) the Supreme Court's recent decision in *Egbert v Boule*[3] makes clear that Plaintiff's claim presents a new *Bivens* context, and special factors counsel hesitation against creating a new Bivens remedy in the context presented; and (2) there is insufficient evidence to support a deliberate indifference claim against either Burdo or Fernandez.  The United States is entitled to summary judgment dismissing Plaintiff's FTCA claim because: (1) the conduct alleged falls within the discretionary function exception to the FTCA; and (2) to the extent Plaintiff alleges medical malpractice in his FTCA claim, the

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)
[2] Plaintiff's First Amendment retaliation claim against Defendants Fernandez and Paul Shipman and  Eighth Amendment excessive force claim against Defendants Bowman and Gianelli were previously dismissed in response to defendants' motion to dismiss.  *See* Decision and Order dated January 19, 2022 (Dkt. No. 56).
[3] *Egbert v Boule*, 142 S.Ct. 1793 (2022).

government is entitled to summary judgment because he has failed to proffer an expert opinion that any government employee deviated from the standard of care.

**FACTS**

Plaintiff alleges that on February 14, 2018, while he was housed in the Special Housing Unit (SHU), his back was injured by a corrections officer during a use-of-force incident.[4]  Dkt. No. 13.  Per protocol, Plaintiff was taken to health services for an assessment immediately following this incident.  Wiley denied injuries or pain, and no injuries were visualized on physical exam. Defendants' Statement of Material Facts ("SOMF") ¶ 11.  The following morning, Wiley was at his cell door during morning sick call rounds, demanding to be seen immediately for back pain.  SOMF ¶ 12.  Nurse Practitioner (NP) Kim Sorrell (not a party) observed that he was upright, mobile and showing no signs of acute pain or distress.  SOMF ¶ 12.  She instructed Plaintiff to fill out a sick call slip.  She noted that he had recently received Tylenol from the indigent stock,[5] and instructed him to take that as directed on the bottle.  *Id.* NP Sorrell noted that Wiley was able to lift himself off the floor to be cuffed through the food tray slot, and that he was able to walk down the stairs to the medical room for an exam.  He screamed that he could not feel his legs, but was able to lift his legs to place them on the foot rest, step up onto the foot rest and lift himself onto the exam table. *Id.* She noted that his subjective complaints did not match objective findings.

Four days later, on February 19, 2018, Plaintiff submitted an "Informal Resolution Form" to the Pharmacist stating that on February 16, 2018, he had requested the OTC medications milk of magnesia and chlorpheniramine, but they had not been issued and he had not been provided with a reason for the delay. SOMF ¶ 13.

---

[4] Plaintiff's claims against the corrections officer related to this incident were previously dismissed on Defendant's motion to dismiss.  Dkt. No. 56.
[5] Plaintiff received 100 tablets of acetaminophen (brand name Tylenol) on January 15, 2018, and 100 tablets of aspirin on January 30, 2018.  SOMF ¶¶ 7, 8, 20.

On February 21, 2018, Plaintiff returned to sick call complaining of lower back pain.  NP Sorrell conducted a physical exam, noting that his gait was normal, he had full range of motion, and he did not appear to be in pain.  NP Sorell's assessment was that Plaintiff was malingering, and she discussed with him "the inappropriateness of feigning illness and demanding immediate attention." SOMF ¶ 16.  NP Sorrell again instructed Plaintiff to take Tylenol for pain and provided a handout detailing lower back exercises.[6]  *Id.*

Also on February 21, 2018, a search of Plaintiff's cell yielded "nuisance contraband[.]" SOMF ¶ 15.  Pursuant to BOP Policy, medication and similar items purchased from the commissary can be considered "nuisance contraband" if there is an "excessive accumulation" of an item.  SOMF ¶ 5.

On March 6, 2018, Defendant Burdo responded to Plaintiff's informal resolution form, noting that a search of Plaintiff's cell yielded full bottles of "Tylenol, Aspirin, Selenium Shampoo, [and] Chlorphenamine."  She instructed Plaintiff that he should use his OTC medications appropriately and then exchange the empty containers with medical staff.  SOMF ¶ 14.  Also on March 6, Burdo emailed other staff members to inform them that several full bottles of medication had been discovered during a search of Wiley's cell.  SOMF ¶ 17.  She further advised that Wiley had been instructed to return his empty pill containers when he needed OTC medications.  *Id.*  She instructed that his cell should be searched again once the empty containers were provided, as "he can put the pills anywhere."  She asked medical staff to write a note in Wiley's medical record every time an OTC medication was given, and reminded staff that Wiley is only permitted to get OTC medications every thirty days.  *Id.*

On March 14, 2018, another BOP provider documented in Plaintiff's medical chart, in connection with Plaintiff's request for magnesia hydroxide (Milk of Magnesia), that Plaintiff "has a proven record

---

[6] Wiley's "sick call slip" on February 21, 2018 requested to have "someone take a look at my lower back . . . and possibly x-rays."  SOMF ¶ 16.  After examining Plaintiff, NP Sorrell did not order x-rays.  However, on August 28, 2018, an x-ray of Plaintiff's spine was performed at FCI Manchester and the results were normal.  SOMF ¶ 21; Reynolds Ex. D at p. 20.

of requesting multiple items from indigent stock simply because he can without referencing any medical complaint and stockpiling the items in his cell."  SOMF ¶ 19.

Plaintiff claims that he was denied OTC medication due to an "illegal policy" implemented by HSA Burdo.  SOMF ¶ 6.  Federal Bureau of Prisons Program Statement P6541.02 "Over-the-Counter Medications" defines who is an indigent inmate and how such inmates may acquire over the counter medications.  *Id.*  at 1. An inmate whose funds are below $6.00 for the 30 days preceding a request for medication is indigent. *Id.*  at 2.  Indigent inmates have one opportunity per week to request OTC medication. *Id.*  at 2. The inmate may request two OTC medications per week but may obtain more if health services staff determine the inmate has an immediate medical need. Id. at 2. Wardens may impose further restrictions to prevent abuse of the program by inmates.  Id*.* at 3.  As of February 28, 2017, FCI Ray Brook policy required inmates to turn in empty <u>prescription</u> pill bottles directly to the pharmacist to receive a refill.  Id. at 4.  Under BOP policy, medicine is considered hard contraband if it is not consumed or used in the manner prescribed.  Id. at 5.  Medication and similar items purchased from the commissary can be considered "nuisance contraband" if there is an "excessive accumulation" of an item. *Id.*

## SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation and internal quotation marks omitted). The moving party has the burden to show the absence of disputed material facts by informing the court of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations . . . or other materials" that support the motion. Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 323.

When a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247–48.

## ARGUMENT

## I.   Plaintiff's Eighth Amendment Claims Against Fernandez and Burdo Are Not Cognizable After *Egbert*.

Whenever a Plaintiff brings damages claims against federal employees in their individual capacity for an alleged constitutional violation, the court must decide the antecedent question of whether a *Bivens* cause of action exists at all. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017).[7] The ability to sue a federal employee individually under the Constitution is "not an automatic entitlement." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Indeed, the Supreme Court has only recognized such a remedy in three contexts: (1) in *Bivens* itself, under the Fourth Amendment for a violation of the prohibition against unreasonable searches and seizures of a private citizen's residence, *Bivens*, 403 U.S. at 389, 397; (2) in *Davis v. Passman*, under the Fifth Amendment Due Process Clause for gender discrimination, 442 U.S. 228, 230–32, 248–49 (1979); and (3) in *Carlson v. Green* under the Eighth Amendment for failing to provide emergent medical treatment to an asthmatic prisoner, resulting in the prisoner's death, 446 U.S. 14, 6 n.1, 19 (1980).

---

[7] Defendants Burdo and Fernandez did not raise the issue of whether a *Bivens* remedy exists for Wiley's deliberate indifference claim at the Motion to Dismiss phase, when Defendants Fernandez, Shipman, Bowman and Gianelli raised similar arguments regarding Wiley's First Amendment retaliation and excessive force claims, because it was not appropriate until the Supreme Court decided *Egbert v. Boule*, 142 S. Ct. 1793 (2022) and because of the need to develop facts not available based on the pleadings. As discussed below, it is clear that Wiley cannot recover after *Egbert*.

Since *Carlson*, the Supreme Court has not expanded *Bivens* to any new contexts and has cautioned that authorizing a *Bivens* remedy "is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). To determine if there is an available *Bivens* remedy the court first must ask "whether the claim arises in a new *Bivens* context," which looks at if the case "differs in a meaningful way" from *Bivens*, *Davis*, and *Carlson*. *Ziglar*, 137 S. Ct. at 1859. If so, a *Bivens* remedy is unavailable if any "special factor" indicates that the judiciary might be arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Id.*

Recently, in *Egbert*, the Court clarified that that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. *Egbert* also emphasized that even in cases presenting "parallel circumstances" with *Bivens*, *Passman*, or *Carlson* a cause of action should only be extended in "the most unusual circumstances. *Id.* at 1801, 1805. Here, the alleged Eighth Amendment claims against Fernandez and Burdo—concerning the allegedly inadequate administration of indigent over-the-counter medicine—meaningfully differ from the failure to address the acute medical emergency that resulted in an inmate's death in *Carlson*. In addition, multiple factors indicate that Congress is better suited than the courts to weigh the costs and benefits of allowing a damages claim to proceed under such circumstances. The Court should grant summary judgment in favor of Fernandez and Burdo.

**A. Wiley's constitutional claims against Fernandez and Burdo present a new context.**

The threshold inquiry of whether a proposed *Bivens* claim presents a new context is easily satisfied, as "even a modest extension is still an extension." *Ziglar*, 137 S. Ct. at 1864. Differences meaningful enough to make a context new include:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the

Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1859–60.

Of the three recognized *Bivens* actions, Wiley's case is most like *Carlson* because it involves alleged violations concerning medical care under the Eighth Amendment. However, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020). Thus, the mere fact that, like in *Carlson*, Wiley purports to bring an Eighth Amendment deliberate indifference claim is not enough. *See Ziglar*, 137 S. Ct. at 1864 (explaining that case involving same "constitutional right" and "mechanism of injury" as prior *Bivens* case can still present new context); *see also infra* n.2 (citing several cases finding alleged Eighth Amendment claims concerning non-life-threatening treatment arise in new context compared to *Carlson*).

The context at issue here is different in several "meaningful" respects from that in *Carlson*. *See Ziglar*, 137 S. Ct. at 1859. In *Carlson*, a prisoner's estate alleged that prison officials were deliberately indifferent to decedent's serious medical needs, resulting in his death, in violation of the Eighth Amendment and decedent's due process rights. *See generally* 446 U.S. at 16, n.1. The prison officials there also administrated contraindicated drugs that exasperated the prisoner's asthma and attempted to "use a respirator known to be inoperative." *Id.* Here, by contrast, Wiley's claims focus on the alleged inadequate administration of over-the-counter medication for treatment of back pain, a non-fatal condition, over the course of a few weeks.  Reynolds Ex. D at p. 35; Dkt. No. 13 at 5–6, 12–13. Wiley's back pain is measurably less serious than that in *Carlson*, and here, unlike in *Carlson*, there is no evidence that either of the individual defendants deliberately exacerbated a life-threatening condition by providing improper treatment during an emergency. And although the Supreme Court has made clear that even differences with *Carlson* that "are perhaps small, at least in practical terms," are enough to satisfy the new-context inquiry, 137 S. Ct. at 1865, the differences here are significant. Whereas in

7

*Carlson*, the grossly inadequate care proved fatal, the non-life-threatening injuries complained of here are amenable to the BOP's Administrative Remedy Program and injunctive relief. In short, it is "of central importance" that here, unlike in *Carlson*, "this is not a case" where "it is damages or nothing." *Id.* at 1863.[8]

Moreover, as discussed below, Wiley's allegations implicate "potential special factors that previous *Bivens* cases did not consider," which itself is sufficient to present a "new context." *Egbert*, S. Ct. at 1803 (quotations omitted). In this case, for example, there are multiple "alternative remedial structures in place" and potential "systemwide consequences of recognizing a cause of action," which were not considered in *Carlson*. *Id.* Wiley's claims readily present a new context. *See Egbert*, 142 S. Ct. at 1809 (emphasizing that even cases presenting "parallel circumstances with *Bivens*, *Davis*, or *Carlson*" must undergo a full special factors analysis before being allowed to proceed).

**B. Special Factors and Alternative Remedies Counsel Against Recognizing a Remedy Here**.

This case implicates special factors that counsel hesitation in extending *Bivens* to this context. The special factors inquiry is broad-ranging and simply asks "whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1805 (quoting 137 S. Ct. at 1858). This court should refrain from creating a new remedy here because Wiley has "alternative, existing process[es] for protecting" his interests, *Wilkie*, 551 U.S. at 550, and because there are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy" in this context. 137 S. Ct. at 1858.

---

[8] Post *Egbert*, a number of courts have found a new context where proposed Eighth Amendment deliberate indifference claims do not allege a life-threatening medical emergency. *See, e.g.*, *McNeal v. Hutchinson*, No. 2:21-CV-3431-JFA-MGB, 2022 WL 16631042, at *3 (D.S.C. Nov. 2, 2022) (allegations regarding medical conditions did not constitute a "medical emergency" as in *Carlson*); *Sloan v. Zook*, No. 3:21-CV-2684-G-BK, 2022 WL 18109548, at *3–4 (N.D. Tex. Dec. 4, 2022), *report and recommendation adopted,* No. 3:21-CV-2684-G-BK, 2023 WL 36075 (N.D. Tex. Jan. 3, 2023), report and recommendation adopted, *Sloan v. Zook*, No. 3:21-CV-2684-G-BK, 2023 WL 36075 (N.D. Tex. Jan. 3, 2023) (finding a new context in part because "did not die in prison because of chronic, mistreated asthma and a significant failure of the medical delivery system, as in *Carlson*"); *Vaughn v. Bassett*, No. 1:19-CV-00129-C, 2022 WL 4299720, at *3 (N.D. Tex. Sept. 19, 2022) (finding new context in failure to treat injury that resulted in permanent disfiguration because inmate's "overall injury is measurably less serious than that in *Carlson*").

A. *Alternative remedial structures are available in this new context.*

Courts "may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Egbert*, 142 S. Ct. at 1804 (quotations omitted). If any such structure is "in place," then "that alone" is sufficient "to limit the power of the Judiciary to infer a new Bivens cause of action." *Id*. (quotations omitted). With respect to alternative processes, "the absence of relief does not by any means necessarily imply that courts should award money damages." *Id.* at 1808 (quotation omitted). Rather, "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Id*. at 1806. In this case, the fact that "Congress has provided alternative remedies for aggrieved parties in [Wiley]'s position" is enough to "independently foreclose a *Bivens* action here." *Id.*

As an initial matter, a *Bivens* remedy is "unavailable because federal prisoners" like Wiley can "file grievances through [BOP's] 'Administrative Remedy Program.'" *Id.* (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)). That alternative remedial scheme "provides . . . means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring." 534 U.S. at 74. Relevant here, the BOP's Administrative Remedy Program allows an inmate who believes he is receiving inadequate medical care to file a grievance to correct the issue. *See* 28 C.F.R. § 542.10. Wiley utilized alternatives to try and remedy his medical concerns. SOMF ¶¶ 13-14. The presence of this alternative remedial scheme is itself sufficient to counsel against the novel *Bivens* remedy Wiley seeks. *See Mack v. Yost*, 968 F.3d 311, 321 (3d Cir. 2020) (finding that the BOP administrative remedy process and availability of injunctive relief provided alternative remedy processes counseling against expansion of *Bivens* to First Amendment retaliation claims); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) (identifying BOP administrative remedies as an alternative method of relief that weighed against extending *Bivens*). In addition, to the extent that Wiley purports to challenge an alleged "illegal policy," (Reynolds Ex. D at pp. 27–29, SOMF ¶ 6) there are "other

alternative forms of judicial relief" available as well, such as the ability to seek injunctive relief. 137 S. Ct. at 1863 (quotation omitted); *see id.* at 1862 (finding it of "central importance" that Plaintiffs challenging alleged policy decisions regarding their conditions of confinement "may seek injunctive relief"); *see also* 534 U.S. at 74 (explaining that a *Bivens* remedy has "never been considered a proper vehicle for altering an entity's policy," whereas "injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally").

The Federal Tort Claims Act represents an additional alternative remedy that is potentially available in the context alleged. The FTCA is an alternative remedial structure through which Congress has provided a damages remedy for torts committed by federal employees in the scope of their employment. *See* 28 U.S.C. §§ 2679, 1346. While the Supreme Court in *Carlson* found that the existence of the FTCA did not by itself preclude Plaintiffs from bringing Bivens claims, *see* 446 U.S. at 23, *Abbasi* seems to have curbed that analysis. *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020) (finding FTCA an alternative remedy because, inter alia, the Supreme Court's "more recent language in [*Abbasi*]" . . . "set a far broader standard, requiring only Congress's creation of 'any alternative, existing process for protecting the injured party's interest,'" "fatally undermines Carlson's finding that the FTCA is not an adequate alternative remedy").

### (B) Separation of powers and Congressional Inaction

Separation-of-powers principles, which "are or should be central to the analysis," also counsel hesitation here. 137 S. Ct. at 1857. The administration of over-the-counter medication and treatment of chronic conditions in prison requires both training and understanding of the limitations of a prison setting. *See Washington v. Fed. Bureau of Prisons*, No. CV 5:16-3913-BHH, 2022 WL 3701577, at *6 (D.S.C. Aug. 26, 2022) ("The provision of chronic medical care is a specialized activity requiring a high degree of training qualification. In the prison context, the provision of such care is made all the more multifaceted because it must coincide with the security demands and inherent limitations of the custody

setting. Given this constellation of circumstances, 'the Judiciary is comparatively ill suited to decide whether a damages remedy against any [BOP medical provider] is appropriate.'"). Such matters implicating prison administration are not the "proper subjects for judicial intervention." *Egbert*, 142 S. Ct. at 1805; *see Callahan*, 965 F.3d at 524 (noting that "the array of challenges facing prison administration and the complexity of those problems . . . counsel in favor . . . of the judiciary not created new causes of action in this area"). There is no indication that the judiciary is better than congress at fashioning a damages action in the context of chronic medical care in federal prisons. *See Egbert*, 142 S. Ct. at 1805.

Congress has also declined to create a cause of action like Wiley seeks, despite having legislated extensively regarding the rights and protections of incarcerated persons, including the provision of medical care. *See* 18 U.S.C. § 3621 (requiring BOP to place prisoners in facilities where "the prisoner's mental and medical health needs" can be met). When Congress has legislated extensively on a topic but declined to create a damages remedy, "the silence of Congress is relevant" and suggests an intent not to create such a remedy. 137 S. Ct. at 1862; *Dotson v. Griesa*, 398 F.3d 156, 167 (2d Cir. 2005) ("[T]he concept of special factors counseling hesitation in the absence of affirmative action by Congress has proved to include an appropriate judicial deference to indications that congressional inaction . . . has not been inadvertent.").

### (C) The Prison Litigation Reform Act

Besides declining to create a damage remedy, Congress has limited the scope of prisoner litigation. In 1996, Congress enacted the Prison Litigation Reform Act which "placed a series of controls on prisoner suits . . . designed to prevent sportive filings in federal court." *Skinner v. Switzer*, 562 U.S. 521, 535–36 (2011). While the Act "made comprehensive changes to the way prisoner abuse claims must be brought in federal courts," a "standalone damages remedy against federal jailers" was notably missing from the statute and its subsequent amendments. 137 S. Ct. at 1865. This Congressional failure

11

to create a *Bivens*-like action in the PLRA could be interpreted as an active choice not to extend *Bivens* to cases involving prisoner mistreatment. *See id*.

Congress has thus had opportunities to authorize Plaintiff's proposed *Bivens* claims when legislating on multiple subjects—including prison medical care and prisoner litigation—but has always declined. This suggests that it would be inappropriate for this Court to act in Congress's place by implying a remedy.

### (D) The Burden on Government Operations Systemwide

A final reason why "Congress is far more competent than the Judiciary" to weigh the costs and benefits of creating a *Bivens* remedy in this case are the "economic and governmental concerns, administrative costs, and the impact on governmental operations systemwide" of implying the type of remedy that Plaintiff seeks. *Egbert*, 142 S. Ct. at 1802 (quotations omitted). BOP currently houses about 158,000 inmates. *See* Fed. Bureau of Prisons, About Our Agency, https://www.bop.gov/about/agency (last visited Feb. 27, 2023). With so many inmates to care for, BOP medical staff are involved in a voluminous number of encounters involving myriad medical issues. Inevitably, inmates will disagree with the medical care they receive. Allowing for an individual damages remedy against prison staff for such grievances, particularly with respect to the treatment of non-fatal conditions, could "invite an onslaught" of costly *Bivens* actions. *Wilkie*, 551 U.S. at 562; *see Egbert*, 142 S. Ct. at 1808 (recognizing that claims which "are common," and thus "more likely to impose a significant expansion of Government liability, counsels against permitting *Bivens* relief." (quotations omitted)); *see also Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018) (refusing to extend *Bivens* where doing so "would likely cause an increase of suits by inmates, increased litigation costs to the government, and burdens on individual prison employees to defend such claims." (quotations and alterations omitted)). Whether to augment the various alternative, existing processes described above with a novel and costly individual damages remedy in the context alleged is a job best left to Congress.

Based on the clarified framework outlined in *Egbert*, Wiley's *Bivens* claims arise in a new context, and there are sound reasons for this court "to defer to Congress" rather than create an implied damages remedy. In particular, the existence of alternative processes and Wiley's utilization those processes with respect to the harm alleged in this case counsels against recognizing a *Bivens* remedy as does the risk of interference with the executive and legislative branches in prison administration.

## II.     Defendants Burdo and Fernandez are Entitled to Summary Judgment on Plaintiff's Deliberate Indifference Claim.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must plead and prove conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Thompson v. Carlsen*, No. 08-CV-487, 2010 WL 843872, at *3 (N.D.N.Y. Mar. 10, 2010) (McAvoy, J.) (citing *Estelle,* 429 U.S. at 105-06; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992). *See also Wilson v. Seiter*, 501 U.S. 294, 297, 308 (1991); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

To prevail on his claims, Plaintiff must have sufficient evidence upon which a jury could reasonably conclude that: (1) he had a serious medical need; (2) each individual defendant acted with deliberate indifference to that serious medical need; and (3) the deliberate indifference to his serious medical need caused him harm or physical injury. *See Farmer v. Brennan,* 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

### A.     There is Insufficient Evidence that Either Burdo or Fernandez Acted With Deliberate Indifference

"Deliberate indifference" is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state, similar to that of criminal recklessness. *See Wilson*, 501 U.S. at 301–03; *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *Thompson*, 2010 WL

13

843872, at *3.  A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm.  *Farmer*, 511 U.S. at 836.  This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996); *Thompson,* 2010 WL 843872, at *3.  Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Plaintiff's allegations here fall far short of deliberate indifference.  He does not allege that he did not receive medical care for his back pain, nor does he challenge the care that he did receive.  NP Sorrell, the medical provider who was actually treating his injuries, examined him, found that his objective exam did not match his subjective complaints of pain, and assessed him as malingering.  She did not see fit to take any medical action other than counsel him to take Tylenol as needed for pain, and perform exercises for lower back pain.  These medical decisions are not challenged in this action.

Rather, the alleged "deliberate indifference" lies solely in HSA Burdo's determination that Wiley could not get any more OTC medication from the commissary unless and until he appropriately used the stash of medications that were found in his cell, and in Fernandez' failure to take corrective action in response to Burdo's determination.  On March 6, 2018, Burdo documented, both in her response to Wiley's informal resolution form and in an email to other staff members, that a recent search of Wiley's cell revealed full bottles of Tylenol and aspirin. SOMF ¶¶ 14, 15, 17.  Burdo's decision to allegedly "deny" Wiley OTC pain medication for his back injury was informed not by deliberate indifference, but rather by the fact that she had information that Wiley not only already had Tylenol, but that he was hoarding OTC medication in violation of prison rules.

14

**B.     There is Insufficient Evidence that Fernandez was Personally Involved in the Alleged Constitutional Violation**

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft*, 556 U.S. at 676; *see also Tangreti v. Bachman,* 983 F.3d 609, 618 (2d Cir. 2020).  Thus, "a plaintiff must plead and prove that each Government-official defendant, through the official's own inactions, has violated the Constitution." *Iqbal* at 676. "For a deliberate indifference claim under the Eighth Amendment to proceed against a supervisor, "'the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it.'" *Powell v. Quay*, No. 18CV5378ERKMMH, 2023 WL 1994873, at *3 (E.D.N.Y. Feb. 14, 2023) (quoting *Tangreti*, 983 F.3d at 616).  "Non-medical prison personnel engage in deliberate indifference where they intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel." *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 274 (N.D.N.Y. 2018) (quoting *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999).

Therefore, Fernandez cannot be held liable unless she was personally involved to the extent that she either disregarded Plaintiff's serious medical need, or intentionally delayed his access to medical care. There is no evidence in the record to establish either. Plaintiff's claim against Fernandez is based entirely on a February 18, 2018 conversation he claims to have had with Fernandez, in which he described his pain and the difficulties presented by Nurse Burdo's policy. Dkt. No. 13. He contends that Fernandez endorsed Burdo's policy and told Plaintiff to "put it on paper" when he mentioned that he was the only one subject to the policy. *Id.* Plaintiff did indeed "put it on paper," submitting an information resolution form the following day.  Dkt. No. 13 at p. 6. After Burdo responded to his informal resolution, Wiley filed an administrative remedy on March 14, 2018. *Id.*  In her role as Warden, Fernandez responded to the administrative remedy on March 30, 2018.  In her response, Fernandez denied Wiley's

15

grievance based on the search of his cell that revealed large quantities of several OTC medications, including Tylenol and aspirin. *Id.* Fernandez' alleged "deliberate indifference" consisted exclusively of her ministerial acts in receiving and denying Plaintiff's oral and written administrative remedy requests.

Allegations of personal involvement via a mere denial of grievances are insufficient to state a claim against supervisory officials because such allegations do not establish a constitutional violation. *See, e.g., Brunache v. Annucci*, No. 22-CV-196 (JLS), 2023 WL 146850, at *15 (W.D.N.Y. Jan. 9, 2023); *Hendricks v. Mallozzi*, No. 920CV1035MADML, 2022 WL 1129887, at *8 (N.D.N.Y. Jan. 14, 2022), *report and recommendation adopted,* No. 920CV1035MADML, 2022 WL 856885 (N.D.N.Y. Mar. 23, 2022) recommendation adopted, *Hendricks v. Mallozzi*, No. 920CV1035MADML, 2022 WL 856885 (N.D.N.Y. Mar. 23, 2022); *Bryant v. Miller*, 2021 WL 5095284, at *20 (N.D.N.Y. July 22, 2021), report and recommendation adopted, 2021 WL 4272396 (N.D.N.Y. Sept. 21, 2021); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 649 (W.D.N.Y. 2010) (allegations that the defendant investigated the plaintiff's grievance and found it unsubstantiated were insufficient to establish personal involvement). This is particular true when the "the grievance determination[] related to plaintiff's medical care." Forshey v. Miller, *Forshey v. Miller*, No. 917CV575LEKATB, 2018 WL 6271840, at *3 (N.D.N.Y. Nov. 7, 2018), *report and recommendation adopted,* No. 917CV0575LEKATB, 2018 WL 6267758 (N.D.N.Y. Nov. 30, 2018), *order rescinded*, and *report and recommendation adopted,* No. 917CV0575LEKATB, 2019 WL 720704 (N.D.N.Y. Feb. 20, 2019), report and recommendation adopted 2019 WL 720074 (Feb. 20, 2019); *see also Battle v. Recktenwald*, No. 14 CV 2738 (VB), 2016 WL 698145, at *10 (S.D.N.Y. Feb. 19, 2016) (granting summary judgement for defendant warden where plaintiff alleged denial of administrative grievance permitted medical staff to continue being deliberately indifferent); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) (nonmedical prison staff are entitled to rely upon the opinions of medical staff as to the best course of treatment for inmates).

Plaintiff complained to Fernandez about Burdo's requirement that he return his empty medication bottles before receiving more medicine. Dkt. No. 13. Fernandez's grievance determinations were therefore related to Plaintiff's medical treatment, and she was entitled to rely on Nurse Burdo's opinion. *Joyner* at 506.

Courts have often dismissed "cases involving conclusory allegations of an unwritten policy" against supervisory officials, but here, Plaintiff's allegations show that Defendant is even further removed from the alleged unwritten policy. *Brunache* at *13. Rather, he alleges that Defendant denied his attempted oral grievance, told him to file an administrative remedy regarding the alleged policy, and then denied his written grievance. Dkt. No. 13. These allegations are insufficient to state a claim of deliberate indifference to a serious medical need against Defendant Fernandez, and accordingly, summary judgment should be granted.

### III.   This Court Lacks Subject Matter Jurisdiction Over Plaintiff's FTCA claim against the United States Because the Conduct Alleged Falls Within the FTCA's Discretionary Function Exception.

#### A.  Legal Standard

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). Indeed, "[i]t is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  *United States v. Mitchell,* 445 U.S. 535, 538 (1980); *quoting United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Randell v. United States*, 64 F.3d 101, 106 (2d Cir. 1995).

The FTCA waives the United States' sovereign immunity for suits arising from any injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1) (emphasis added). The FTCA is an express, but limited, waiver of sovereign immunity. However, the scope of the FTCA's waiver of

17

sovereign immunity is limited by a number of statutory exceptions.  Where, as here, alleged conduct fails within one of the exceptions to the FTCA, the limited waiver of sovereign immunity does not apply to claims based on that conduct, and the Court does not have jurisdiction.

One of the enumerated exceptions to the FTCA's waiver of sovereign immunity is the Discretionary Function Exception (DFE), which provides that the United States shall not be liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or [any claim] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a); *United States v. Gaubert*, 499 U.S. 315, 322 (1991). Congress's intent in establishing the DFE was to avoid judicial attacks through tort actions on legislative and administrative decisions based in public policy. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). The DFE applies if two conditions are met: (1) the alleged wrongful or negligent acts are discretionary; and (2) the choice is based on considerations of public policy. *See e.g.*, *Gaubert* at 322-323; *Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021); *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000). A discretionary act "involve[s] an element of judgment or choice and [is] not compelled by statute or regulation." *Cangemi* at 130.

Moreover, "it is the nature of the conduct, rather than the status of the actor, that governs whether the [DFE] applies . . . ." *Varig Airlines* at 813. Thus, the exception applies to agencies and to their employees who exercise discretion. *Id.*; *see also*, *Dalehite v. United States*, 346 U.S. 15, 33 (1953). The DFE was "plainly [] intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *Varig Airlines* at 813-14.

The ultimate question in a DFE analysis is whether the employee's acts, regardless of the employee's rank, "are of the nature and quality that Congress intended to shield from tort liability." *Id.* at 813. The Government bears the initial burden of demonstrating that the DFE applies in each case, but

the Plaintiff must rebut a successful assertion by demonstrating that the act was either not discretionary, or not based on policy considerations. *See e.g.*, *Cangemi at* 130; *Coulthurst* at 110; *Anson v. United States*, 294 F. Supp. 3d 144, 158 (W.D.N.Y. 2018).

**B. Defendant Burdo's actions were discretionary in nature.**

Plaintiff claims that he was denied medication due to an "illegal policy" implemented by HSA Burdo.  SOMF ¶ 13.  Plaintiff challenges Burdo's decision to require him to return his empty pill bottles, and to have his cell searched, before receiving additional over-the-counter (OTC) medication. *See* Dkt. No. 13, 5-6. However, her decision to establish this requirement ofr Plaintiff was based on Plaintiff's hoarding of medication and the associated policy implications. Moreover, because BOP policy and FCI Ray Brook policy do not require inmates to return empty pill bottles to receive OTC medication, Nurse Burdo's act was discretionary in nature. A discretionary act that is grounded in policy considerations is subject to the DFE.

On February 19, 2018, Plaintiff requested OTC medication through an informal resolution. SOMF ¶ 13. Burdo responded that a search of Plaintiff's cell yielded several full bottles of OTC medication, including acetaminophen and aspirin. Id. ¶ 14. In fact, a search of Plaintiff's cell on February 21, 2018, yielded "nuisance contraband." Id. ¶ 15. Then, on March 6, Burdo emailed other staff members to alert them that Plaintiff had been keeping full bottles of OTC medication in his cell. Id. ¶ 17.  She included instructions that Plaintiff should not receive OTC medication without returning empty pill bottles, and that even upon providing the bottles, his cell should be searched to prevent him from emptying the bottles and hiding the pills elsewhere. Id.

At FCI Ray Brook, inmates may receive refills of *prescription* medication by submitting a refill request form and handing empty medication bottles to the pharmacist. RBK Institution Supplement 6010.05J, *Health Services Manual*, ¶ 13(c) ("*Health Services Manual*") (emphasis added); SOMF ¶ 4. FCI Ray Brook does not have a policy requiring that inmates return empty pill bottles to receive OTC

19

medication. Moreover, BOP's program statement on OTC medication does not contain this requirement. *See* SOMF ¶ 4.  In fact, the program statement leaves any additional measures to prevent abuse of the indigent inmate OTC policy to the discretion of the wardens. Id.  28 C.F.R. § 549.31(c); SOMF ¶ 3. Therefore, Burdo's conduct was not the result of a federal regulation, BOP policy, or FCI Ray Brook policy. It was entirely discretionary.

### C.  Burdo's decision was grounded in public policy considerations.

The prison context often implicates public policies regarding the security and maintenance of prison order. *See*, *Washington v. Harper*, 494 U.S. 210, 245, n. 12 (1990) (Stevens, J., concurring) (quoting United States' amicus brief, "'[t]he paramount concerns in running a prison…are maintaining institutional security, preserving internal order, and establishing a therapeutic environment'"). Federal courts take a "broad hands-off attitude toward the problems of prison administration[,]" especially when "matters of prison discipline and security are [] at issue." *Todaro v. Ward*, 565 F. 2d 48, 53-54 (2d Cir. 1977).

Here, both security and discipline are primary concerns. Inmates may hoard and misuse medication, creating a health risk, or they may sell the medication, creating risks to health, security, and order. *See*, *e.g., Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 332-33 (2012) (noting that medication in prison increases suicide risk, and that contraband in general contributes to violence and an illicit economy); *Munger v. Cahill*, No. 916CV728BKSCFH, 2018 WL 4635709, at *3 (N.D.N.Y. July 23, 2018), *report and recommendation adopted,* No. 916CV00728BKSCFH, 2018 WL 4179451 (N.D.N.Y. Aug. 31, 2018), *aff'd,* 792 F. App'x 110 (2d Cir. 2020), n. 3 (N.D.N.Y. July 23, 2018) (Hummel, J.) (doctor stopped inmate's prescription for allegedly "cheeking" and selling medication); *Brockett v. Lupis*, No. 3:21-CV-355 (KAD), 2022 WL 1658835, at *3, 4 (D. Conn. May 25, 2022), *appeal dismissed* (Aug. 30, 2022), (inmate hoarding medication that could damage the liver in sufficient doses).

20

HSA Burdo's requirement that Plaintiff return empty pill bottles, and that staff search his cell before providing him more OTC medications preserve the security and order of FCI Ray Brook. Prior searches of Plaintiff's cell showed that he was hoarding medication. *See* SOMF ¶¶ 14, 15. While acetaminophen is a common household drug, it still presents a significant health risk. Nat'l Inst. of Diabetes and Digestive and Kidney Diseases, LiverTox: Clinical and Rsch. Info. on Drug-Induced Liver Inj. 1-2 (2012) (last updated Jan. 28, 2016), https://www.ncbi.nlm.nih.gov/books/NBK548162/ (noting that most common form of acetaminophen injury is from intentional or unintentional overdose, which can result in acute liver damage or death). Moreover, acetaminophen and other OTC medications increase the risk of violence because they help foster an illicit economy where contraband may be so prized that to obtain it, inmates may resort to violence. *See generally*, *Florence* at 332-33. Accordingly, Nurse Burdo's implementation of the policy specific to the Plaintiff, who was hoarding medication that he received for free as an indigent inmate, was well-grounded in policy considerations.

## IV.   To the Extent that it is Not Barred by the Discretionary Function Exception, the United States is Entitled to Summary Judgment on Plaintiff's FTCA's Claim.

To the extent that Plaintiff's FTCA claim challenges only Burdo's imposition of an "illegal policy," the claim falls within the discretionary function exception as discussed above. To the extent that it challenges the failure to provide OTC pain medication as a form of medical malpractice, or is otherwise viewed as a claim of medical malpractice relating to the treatment of his back injury, the claim fails because Plaintiff has not adduced expert medical testimony – or any other evidence – to support his conclusory allegation of medical malpractice.

Liability under the FTCA is generally determined by the law of the state in which the allegedly tortious conduct occurred; thus, New York law applies to this case. See 28 U.S.C. § 2674; *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). To establish a prima facie case of liability in a medical malpractice action under New York law, a plaintiff must establish (1) the standard of care in the locality

where the treatment occurred, (2) that the defendant breached that standard of care, and (3) that the breach was the proximate cause of the injury.  *See Rosen v. John J. Foley Skilled Nursing Facility*, 45 A.D.3d 558, 558–59 (2d Dept. 2007) (citing *Pace v. Jakus*, 291 A.D.2d 436 (2d Dept. 2002); *Berger v. Becker*, 272 A.D.2d 565 (2d Dept. 2000)).  To defeat a motion for summary judgment, the plaintiff must "establish not only a deviation or departure from accepted practice but also the 'requisite nexus between the malpractice allegedly committed by defendant… and the [injury]." *Wahila v. Kerr*, 204 A.D.2d 935, 937 (3d Dep't 1994) (quoting *Fridovich v. David*, 188 A.D.2d 984, 985 (3d Dep't 1992)).  Conclusory allegations of malpractice, unsupported by evidence, are insufficient to defeat a motion for summary judgment.  See *Duvidovich v. George,* 122 A.D.3d 666, 666–67 (2d Dept. 2014) (citing, e.g., *Alvarez  v. Prospect Hosp.*, 68 N.Y.2d 320, 324 (11986)); *Horth v. Mansur*, 243 A.D.2d 1041, 1042 (3d Dep't 1997).

Expert testimony is normally required to establish the applicable standard of practice and, in an appropriate case, to determine whether an alleged deviation from that standard was the proximate cause of a plaintiff's injuries. *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342–43 (S.D.N.Y. 2005).  "It is well established in New York law that 'unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice.'" *Sitts v. United States*, 811 F.2d 736, 739 (2d Cir. 1987), *holding modified by Einaugler v. Supreme Ct. of State of N.Y.*, 109 F.3d 836 (2d Cir. 1997) (quoting *Keane v. Sloan-Kettering Institute for Cancer Research,* 96 A.D.2d 505 (2d Dept. 1983)); *Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995); *Einaugler v. Supreme Ct. of State of N.Y.*, 109 F.3d 836, 841 (2d Cir. 1997).

Summary judgment is appropriate, notwithstanding the existence of genuine factual disputes, if a plaintiff fails to "identify any medical expert who could establish his prima facie case at trial." *Sitts*, 811 F.2d at 742.  "If a plaintiff cannot establish a prima facie case without the benefit of expert testimony,

and the plaintiff is unable to procure such testimony, then summary judgment is appropriate." *Zeak v. United States*, No. 11 CIV. 4253 KPF, 2014 WL 5324319, at *11 (S.D.N.Y. Oct. 20, 2014). Here, Plaintiff has failed to offer competent evidence that any government employee departed from good and accepted practice.

Plaintiff's FTCA claim focuses almost exclusively on Burdo's restrictions on his access to OTC medications in light of the quantity of medication found in his cell. To the extent the complaint may be read liberally to infer a claim that the United States was negligent in failing to treat his back injury, there is no evidence that he even suffered a back injury and he has no medical expert who will testify that the treatment he did receive deviated from the standard of care.[9] Likewise, during his deposition Plaintiff was unable to identify any particular treatment that he should have, but did not, receive for his back pain. Reynolds Ex. D at pp. 35-36. Additionally, he testified that there was nothing that BOP medical staff did to treat his condition that they should not have done. Reynolds Ex. D at p. 36. His testimony seems to indicate that the fact that he was not given pain medications is itself malpractice. *Id*. However, the evidence establishes that he had Tylenol and aspirin in his possession at the time of the alleged incident, and he has not proffered expert testimony to establish that any alleged denial of access to OTC medications deviated from the standard of care and caused an injury.

Thus, Plaintiff has not adduced sufficient evidence to support a prima facie case, and the United States is entitled to summary judgment.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court issue an order granting its motion for summary judgment, with prejudice and with costs, entering judgment in the Defendants favor, and ordering such other and further relief as this Court deems just and proper.

---

[9] There is no evidence in the medical record or elsewhere that Plaintiff was ever diagnosed with a back injury. Plaintiff acknowledged in his deposition testimony that he denied injuries or pain, and that no injuries were visualized on physical exam immediately following the February 2018 incident. SOMF ¶ 11. Moreover, on August 28, 2018, an x-ray was performed on Plaintiff's spine and the results were normal. Reynolds Ex. D at p. 20.

Dated: March 7, 2023                             CARLA B. FREEDMAN
                                             United States Attorney

                    By:      *Ransom Reynolds*
                                       Ransom P. Reynolds
                                       Assistant United States Attorney
                                       Bar Roll No. 512035

24