**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

SEAN T. WILEY,

                        Plaintiff,

      v.

VERONICA FERNANDEZ, et al.,          No. 9:19-CV-00652
                             (GTS/CFH)

                   Defendants.

─────────────────────────────────

**APPEARANCES:**                      **OF COUNSEL:**

SEAN T. WILEY
09137424
Allenwood U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 3000
White Deer, Pennsylvania 17887
Plaintiff pro se

Attorney for the                    RANSOM P. REYNOLDS, III, ESQ.
United States of America         Assistant United States Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261
Attorney for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Sean T. Wiley ("plaintiff"), who was at all relevant times in the custody

of the Bureau of Prisons ("BOP"), brings this action seeking relief for violations of his

rights under the Eighth Amendment and the Federal Tort Claims Act ("FTCA"), against

─────────────

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Warden Veronica Fernandez ("Fernandez"), Hospital Administrator Kim Burdo ("Burdo"), and the United States of America (collectively, "defendants").  See Dkt. No. 13 ("Am. Compl.").  Presently before the Court is defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. Nos. 90, 98.  Plaintiff opposed, and defendants replied.  See Dkt. Nos. 105, 111.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

On review of defendants' motion for summary judgment, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party.  See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

### A. Plaintiff's Factual Assertions

As an indigent inmate, plaintiff qualified to receive free over-the-counter ("OTC") medication pursuant to BOP Program Statement 6541.02.[2]  See Am. Compl. at 5, 45. Between January 15, 2018, and January 29, 2018, plaintiff made three requests for OTC medication.  See id. at 12.  However, on January 29, 2018, Burdo "refuse[d] to allow [him] to receive 'any' OTC meds."  Id.

---

[2] BOP Program Statement 6541.02 "establishes a program allowing inmates improved access to Over-the-Counter (OTC) Medications[.]"  Dkt. No. 105 at 23.  "All inmates, including those without funds (indigent), will have the same opportunity to obtain OTC medications (once weekly)."  Id. at 24; see also 28 C.F.R. § 549.31 (outlining the procedure for inmates without funds to obtain OTC medications).

On February 14, 2018, plaintiff suffered "a serious staff assault" and received "a very serious debilitating injury to [his] back and spine." Am. Compl. at 5. Plaintiff saw a nonparty nurse on February 15, 2018, who "did confirm a[n] injury to the plaintiff's back and . . . did prescribe [OTC medication] for the pain along with back exercises." Id. Plaintiff saw the nurse again on February 19, 2018, and informed her "that the [OTC] medication . . . that was ordered [on] Feb[ruary] 15 hadn't been delivered." Id. In response, the nurse informed plaintiff that "Berdo [sic] g[a]ve 'all' medical personal orders that [he] was to receive nothing from medical[.]" Id.

"That same day," on February 19, 2018, plaintiff "filed [an] administrative remedy" and also "put in a request" that "was made to the pharmcist [sic][.]" Am. Compl. at 5; see Am. Compl. at 47 (plaintiff's "informal resolution form," dated February 19, 2018). Burdo replied to plaintiff's request, stating "that she had install[ed] her own new policy, procedure, and regulation and rule circumventing Bureau Program Statement [6541.02] in which [plaintiff] now would have to retain and exchange empty bottles, tubes, containers, and etc. to now be able to obtain [his] OTC medication as well as [his] prescribed medication." Id. at 5.

On February 21, 2018, plaintiff "explain[ed] in person" to Burdo "the degree of [his] injury that [he] had sustain[ed] from the staff assault and the comments made by [the nurse] about [Burdo's policy.]" Am. Compl. at 5. Plaintiff "informed Ms. Berdo [sic] that [he] had already discarded [his] empty containers," as he was told by the lieutenant in the special housing unit ("SHU") that he "couldn't retain empty bottles, tubes, and containers" because those items are considered "clutter by SHU rules." Id. at 5-6. Plaintiff then spoke with Fernandez about the difficulties he was experiencing with his

back injury and the lack of medication, and he asked, "why was it that [he was] the only one in the Bureau who has to adhere to [Burdo's] illegal policy." Id. Fernandez responded that "she was fine with this new policy and [she] fully endorsed it," but if plaintiff had a complaint he should "put it on paper." Id.

On March 12, 2018, plaintiff received a response to the "administrative remedy" he filed on February 19, 2018. Am. Compl. at 5-6. Plaintiff filed an additional "admin[istrative] remedy" on March 14, 2018, and Fernandez responded on March 30, 2018, that she "fully endorsed" Burdo's "illegal policy." Id.; see Am. Compl. at 30 (confirming receipt of plaintiff's administrative remedy filed March 14, 2018). Plaintiff filed an appeal to the Regional Director. See id.; see also Am. Compl. at 31 (plaintiff's regional administrative remedy appeal form, dated April 5, 2018).

As of March 27, 2018, Burdo and Fernandez stopped "their illegal policy" and "finally started to provide [plaintiff's] OTC request as well as [his] prescribed medication." Am. Compl. at 6.


## II. Legal Standard

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). A fact is material if it

"might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).  As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]"  At the same time, our cases have also indicated that we cannot read into pro se

> submissions claims that are not "consistent" with the pro se
> litigant's allegations, or arguments that the submissions
> themselves do not "suggest," that we should not "excuse
> frivolous or vexatious filings by pro se litigants," and that pro
> se status "does not exempt a party from compliance with
> relevant rules of procedural and substantive law[]" . . . .

Id. (citations omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

### III. Discussion

Plaintiff raises an Eighth Amendment claim against Fernandez and Burdo pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), arguing that the individual defendants were "deliberate[ly] indifferen[t] to his pain and medical condition" when they "denied [him] pain medications[.]"  Dkt. No. 105 at 3; see Am. Compl. at 5-6, 12-13, 17.  Plaintiff also asserts a claim against the United States under the FTCA.  See Am. Compl. at 4, 16, 18.

### A. Plaintiff's Eighth Amendment Claim

Defendants argue that Burdo and Fernandez are entitled to summary judgment on plaintiff's Eighth Amendment claim because "the Supreme Court's recent decision in Egbert v. Boule makes clear that plaintiff's claim presents a new Bivens context, and special factors counsel hesitation against creating a new Bivens remedy in the context presented[.]"  Dkt. No. 98 at 4 (citing Egbert v. Boule, 596 U.S. 482 (2022)).

### 1. Whether Plaintiff's Claim Can be Brought Under Bivens

Congress provides, in 42 U.S.C § 1983, "a specific damages remedy for plaintiffs whose constitutional rights are violated by state officials[.]"  Ziglar v. Abbasi, 582 U.S. 120, 121 (2017).  There is no corresponding remedy for constitutional violations by officers of the Federal Government.  See id. at 129.  In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, the Supreme Court of the United States implied a private right of action "to compensate persons injured by federal officers."  Ziglar, 582 U.S. at 130-31 (citing Bivens, 403 U.S. at 397).  Specifically, the Supreme Court held that a plaintiff may bring an action against federal agents in their individual capacities for violating his or her Fourth Amendment rights against unreasonable searches and seizures.  See id. at 389, 395-97.  "In the decade that followed, the [Supreme] Court recognized what has come to be called an implied cause of action in two cases involving other constitutional violations": (1) where a plaintiff alleged gender discrimination in violation of the Fifth Amendment's Due Process Clause, Davis v. Passman, 442 U.S. 228 (1979); and (2) where a plaintiff complained of deliberate medical indifference in violation of the Eighth Amendment, Carlson v. Green, 446 U.S. 14 (1980).  Ziglar, 582 U.S. at 131.

"The Supreme Court has not explicitly extended Bivens to other contexts in the ensuing forty years."  Mirvis v. Quay, No. 19-CV-2573 (LDH/VMS), 2023 WL 5671935, at *3 (E.D.N.Y. Sept. 1, 2023).[3]  "Indeed, in Ziglar v. Abbasi, the Supreme Court made plain that Bivens would not operate as the 'substantial equivalent of 42 U.S.C. § 1983' to permit recovery in any new context and new category of defendant."  Id. (quoting Ziglar, 582 U.S. at 132, 135).  Instead, the Supreme Court acknowledged a "notable

---

[3] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

change in [its] approach to recognizing implied causes of action," now clearly "disfavor[ing] . . . extend[ing] <u>Bivens</u> to any new context or new category of defendants." <u>Ziglar</u>, 582 U.S. at 135 (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009), and <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 68 (2001)) (internal quotation marks omitted).

Accordingly, when presented with a <u>Bivens</u> claim, the Supreme Court has instructed district courts to "proceed[ ] in two steps."  <u>Egbert</u>, 596 U.S. at 492.  First, "we ask whether the case presents 'a new <u>Bivens</u> context[.]'"  <u>Id.</u> (quoting <u>Ziglar</u>, 582 U.S. at 147).  "Second, if a claim arises in a new context, a <u>Bivens</u> remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  <u>Id.</u> (quoting <u>Ziglar</u>, 582 U.S. at 136).  "If there is even a single 'reason to pause before applying <u>Bivens</u> in a new context,' a court may not recognize a <u>Bivens</u> remedy."  <u>Id.</u> (quoting <u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 743 (2020)).

### a. Whether Plaintiff's Claim Presents a "New Context"

"The proper test for determining whether a case presents a new <u>Bivens</u> context is as follows[:] If the case is different in a meaningful way from previous <u>Bivens</u> cases decided by th[e Supreme] Court, then the context is new."  <u>Ziglar</u>, 582 U.S. at 139.  In <u>Ziglar</u>, the Supreme Court provided a non-exhaustive list of ways in which a case could "differ in a meaningfully way":

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous <u>Bivens</u> cases did not consider.

Id. at 139-40; see Hernandez, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

As noted above, "[t]he Supreme Court has limited the availability of Bivens remedies to three [contexts]: a Fourth Amendment claim arising from an unlawful search and arrest, [Bivens, 403 U.S. at 388]; a Fifth Amendment claim based on sex-discrimination in the workplace, [Davis, 442 U.S. at 228]; and an Eighth Amendment claim for failure to provide adequate medical treatment, [Carlson, 446 U.S. at 14]." Mendoza v. Edge, 615 F. Supp. 3d 163, 169 (E.D.N.Y. 2022). "[T]he Supreme Court has refused to extend Bivens to contexts beyond the specific clauses of the specific amendments for which a cause of action had been implied, or even to other classes of defendants facing liability under those same clauses." Sanford v. Bruno, No. 17-CV-5132, 2018 WL 2198759, at *4 (E.D.N.Y. May 14, 2018).

Here, plaintiff argues his claim arises from the same context that was present in Carlson v. Green. See Dkt. No. 105 at 5; see also Carlson, 446 U.S. at 14. In Carlson, the plaintiff alleged that the defendants, federal prison officials, were deliberately indifferent to her son's need for medical care for his asthma, which ultimately led to his death. See Carlson, 446 U.S. at 16 n.1. Specifically, the plaintiff alleged that prison officials,

> being fully apprised of the gross inadequacy of medical facilities and staff at the [federal detention center], and of the seriousness of [her son]'s chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital.

Id.  "The complaint further allege[d] that [the plaintiff's son's] death resulted from these acts and omissions," and that the defendants "were deliberately indifferent to [the plaintiff's son's] serious medical needs[.]"  Id.  These allegations were considered sufficient under Supreme Court precedent to state an Eighth Amendment violation.  Id. at 17-18; see also Estelle v. Gamble, 429 U.S. 97 (1976).  The Court went on to examine whether there were either "special factors counseling hesitation" or "alternative remed[ies]" that would preclude extending Bivens to the plaintiff's claim.  Carlson, 446 U.S. at 18-19.  Finding neither, the Court extended Bivens and implied a cause of action for damages.  See id. at 18-23.

Courts in this Circuit have determined that a case presents the same context as Carlson where the plaintiff alleges sufficiently similar "serious medical needs." Mendoza, 615 F. Supp. 3d at 171 (concluding that the plaintiff's "claim that the defendants were deliberately indifferent to his health bears an 'extremely strong resemblance' to the Eighth Amendment deliberate indifference claim at issue in Carlson," given that the plaintiff was denied medical care after he "suffered lacerations and bruises to his face, head, chest, back, wrists and legs . . . [and t]wo of his teeth, his jaw and his nose were broken, and he urinated blood for two or three days") (quoting Laurent v. Borecky, No. 17-CV-3300 (PKC/LB), 2018 WL 2973386, at *5 (E.D.N.Y. June 12, 2018)); see also Jenkins v. Walls, No. 20-CV-1224 (CM), 2020 WL 1140782, at *1-2 (S.D.N.Y. Mar. 6, 2020) (implying a Bivens remedy where the inmate plaintiff alleged that the defendants were "deliberately indifferent to his serious medical needs" in violation of the Eighth Amendment).  For example, where a plaintiff "allege[d] repeated concerns and complaints related to injuries resulting from ongoing sexual assaults and

at least three specific instances of reporting to officers who did not immediately provide medical care," thereafter suffering "severe pain, fractured ribs, a hole in his stomach, and a pinched nerve," the Eastern District of New York concluded that, given the severity of his injuries, the plaintiff could bring a deliberate indifference claim under Bivens. Mirvis, 2023 WL 5671935, at *4-6.[4]

By contrast, courts have found a new context in Eighth Amendment cases where the medical condition and care at issue were different from Carlson. See, e.g., Caraballo v. Pliler, No. 21-CV-10476 (PMH), 2023 WL 3467185, at *8 (S.D.N.Y. May 15, 2023) ("Because the [d]efendants' alleged deliberate indifference to the [p]laintiff's COVID-19 symptoms did not result in any serious injury or harm, the [p]laintiff's allegations would present a new Bivens context that is much different from the life-threatening asthma attack that the plaintiff suffered in Carlson.") (citations and quotation marks omitted). For example, in Rivera v. Fed. Bureau of Prisons, the plaintiff brought a Bivens claim alleging "deliberate indifference to the medical needs of a person in federal custody[.]" Rivera v. Fed. Bureau of Prisons, No. 17-CV-05103 (GBD/DF), 2018 WL 11312146, at *8 (S.D.N.Y. Dec. 14, 2018), report and recommendation adopted, 368 F. Supp. 3d 741 (S.D.N.Y. 2019). The Southern District of New York recognized the plaintiff's claim as similar to Carlson, but determined:

> there [was] a key distinction between the two [cases]: unlike in Carlson, where medical personnel failed to provide any medical treatment for a life-

---

[4] In Mirvis, as a pre-trial detainee, the plaintiff's claim was brought under the Fifth Amendment and not the Eighth Amendment, as in Carlson. See Mirvis, 2023 WL 5671935, at *4-6. The Eastern District explained, "that [the p]laintiff's claims arise under a different constitutional provision is not necessarily dispositive as to whether [the p]laintiff's claims implicate a new Bivens context," and permitted the plaintiff to bring the action under Bivens. Id. at *6; see Geritano v. AUSA Off. for E.D.N.Y., No. 20-CV-0781 (LLS), 2020 WL 2192559, at *4 (S.D.N.Y. May 5, 2020) ("Courts in this district have held that a federal pretrial detainee may bring a medical claim under the Fifth Amendment because such a claim is the same context as an Eighth Amendment claim already recognized in Carlson.") (citing Laurent, 2018 WL 2973386, at *5).

threatening condition, [the p]laintiff's <u>Bivens</u> claims centers on whether he was constitutionally entitled to a certain dosage of a drug as part of a drug treatment program, in which he admits he was placed.

<u>Id.</u> at *8.  The Court concluded that a "granting of a <u>Bivens</u> remedy under these facts and circumstances would extend the remedy well beyond what was presented in <u>Carlson</u>, and, as [<u>Ziglar</u>] states, 'even a modest extension [of <u>Carlson</u>] is still an extension.'"  <u>Id.</u> at *8 (quoting <u>Ziglar</u>, 582 U.S. at 147); <u>see</u> <u>Edwards v. Gizzi</u>, No. 20-CV-7371 (KMK), 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (holding that the plaintiff's deliberate indifference claim over leaving an imprisoned person with an untreated broken arm is a "new context" because being left with a broken arm and "in extreme pain" is "clearly and meaningfully different from a failure to provide life-saving medical care to an inmate with asthma") (citations and quotation marks omitted); <u>see also</u> <u>Bettis v. Grijalva</u>, No. 21-CV-7505 (GWG), 2023 WL 4141869, at *6 (S.D.N.Y. June 23, 2023) (collecting cases).

Here, plaintiff alleges that despite suffering from "a very serious debilitating injury to [his] back and spine," Burdo and Fernandez denied him medication.  Am. Compl. at 5-6. Even accepting plaintiff's allegations as true, plaintiff's Eighth Amendment claim arises in a new <u>Bivens</u> context.  In particular, plaintiff's back injury and medication denial is not life threatening.  <u>Cf.</u> <u>Carlson</u>, 446 U.S. at 16 n.1.  This is "materially distinct" from <u>Carlson</u>, where the prison officials' failure to address the prisoner's serious medical needs resulted in his death.  <u>Peguero v. Quay</u>, No. 1:22-CV-00057, 2023 WL 2410882, at *10 (M.D. Pa. Mar. 8, 2023) (concluding that the plaintiff's allegations that he was denied medical care and medication for his chronic lower back pain presented a new <u>Bivens</u> context); <u>see</u> <u>Muniz v. United States</u>, No. CV-22-0816 (NLH/MJS), 2023 WL

8469510, at *5 (D.N.J. Dec. 7, 2023) ("While the Court does not minimize [the p]laintiff's injuries, they are meaningfully different from the medical emergency faced by the inmate in Carlson that ultimately resulted in [the inmate's] death.").  "In other words, the Carlson Court extended an implied cause of action for money damages pursuant to Bivens where the alleged deliberate indifference of prison officials was most serious; it resulted in a fatality of a prisoner."  Peguero, 2023 WL 2410882, at *10.

Accordingly, although Carlson and this case "do involve similar allegations of [deliberate medical indifference] and thus arguably present 'almost parallel circumstances' . . . , these superficial similarities are not enough" to determine that plaintiff's claim comes within the same Bivens context of Carlson.  Egbert, 596 U.S. at 495 (quoting Ziglar, 582 U.S. at 139).  Thus, plaintiff's Eighth Amendment claim presents a new Bivens context.[5]

### b. Whether There Are "Special Factors" That Counsel Hesitation

"Where, as here, a court determines a claim arises under a new Bivens context, the court must then consider 'whether there are any special factors that counsel hesitation about granting the extension.'"  Mirvis, 2023 WL 5671935, at *9 (quoting Hernandez, 140 S. Ct. at 743).  This inquiry must focus on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  Ziglar, 582 U.S. at 136.  Special factors

---

[5] Plaintiff also asserts, in part, that defendants violated his Eighth Amendment rights through the implementation of an "illegal" "policy, procedure, and regulation and rule circumventing [the] Bureau Program Statement[.]"  Am. Compl. at 5-6.  This claim itself attacks a policy, i.e., whether to provide plaintiff medication, "and such a claim has not been recognized as one meriting a remedy under Bivens."  Severe v. USA, No. CV SAG-20-3404, 2021 WL 4521345, at *14 (D. Md. Oct. 1, 2021).  In fact, there is precedent stating that changing or challenging a policy is not an acceptable goal of a Bivens claim.  See F.D.I.C. v. Meyer, 510 U.S. 471, 485 (1994) ("It must be remembered that the purpose of Bivens is to deter the [individual] officer."); see also Malesko, 534 U.S. at 74 (Bivens was "never considered a proper vehicle for altering an entity's policy").

might include "an alternative remedial scheme, the manner in which [ ] Congress has structured its regulatory authority, the burden of a damages remedy on the Government and individual employees, or any other unforeseeable factor that would counsel restraint." Crespo v. Hurwitz, No. 17-CV-6329 (RRM/PK), 2020 WL 7021658, at *5 (E.D.N.Y. Nov. 30, 2020); see Ziglar, 582 U.S. at 136 ("[T]o be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative.").

### i. Alternative Remedial Structures

Courts must consider whether "there is an alternative remedial structure present . . . [as] that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Ziglar, 582 U.S. at 137 ("For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'") (quoting Wilkie v. Robbins, 551 U.S. 537, 550 (2007)).  Importantly, "when alternative methods of relief are available, a Bivens remedy usually is not." Ziglar, 582 U.S. at 145.

Here, defendants argue that "'Congress has provided alternative remedies for aggrieved parties in [plaintiff]'s position' [which] is enough to 'independently foreclose a Bivens action here.'" Dkt. No. 98 at 12 (quoting Egbert, 596 U.S. at 497).  Namely, defendants point to the FTCA, the BOP's Administrative Remedy Program, and equitable remedies, such as injunctive relief.  See Dkt. No. 98 at 12-13.

First, "the existence of the FTCA and its associated administrative processes as an alternative avenue of redress is a reason to decline to extend the Bivens remedy."

Dean v. Robinson, 656 F. Supp. 3d 400, 412 (W.D.N.Y. 2023) (citing Egbert, 596 U.S. at 493); see Edwards, 2022 WL 309393, at *9 ("The Court agrees with the many cases which have found the existence FTCA to be a special factor counseling hesitation in extending Bivens.").  As discussed infra, plaintiff has sued the United States pursuant to the FTCA, seeking damages for the same harm alleged in his Bivens claim.  See discussion infra Subsection III.B.  "Put another way, [p]laintiff not only had means of obtaining relief other than initiating a Bivens claim, but he actively pursued such relief." Swinton v. Serdula, No. 15-CV-47, 2022 WL 3701196, at *7 (W.D.N.Y. Aug. 26, 2022) (explaining that the availability of the FTCA remedy for the plaintiff's deliberate medical indifference claim precludes the extension of a Bivens remedy).

Second, Bivens relief is unavailable to plaintiff because he, as a federal prisoner, could "file grievances through an 'Administrative Remedy Program.'"  Egbert, 596 U.S. at 497 (quoting Malesko, 534 U.S. at 74).  The BOP's Administrative Remedy Program "provides . . . means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring."  Malesko, 534 U.S. at 74.  Plaintiff could have—and did—use the BOP's Administrative Remedy Program.[6]  See, e.g., Am. Compl. at 30-31, 41-43, 46-48; see also Rivera, 2018 WL 11312146, at *8 (finding that the BOP's Administrative Remedy Program constituted an alternative remedial scheme to a Bivens remedy).

Finally, plaintiff alternatively could have sought injunctive or declaratory relief to challenge Burdo's "illegal policy" at time the policy was in place.  Am. Compl. at 6; see

---

[6] "It is irrelevant whether that alternative avenue of redress could provide complete relief to Plaintiff—'the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.'"  Dean, 656 F. Supp. 3d at 412 (quoting Egbert, 596 U.S. at 493).

Ojo v. United States, 364 F. Supp. 3d 163, 174 (E.D.N.Y. 2019) (explaining that the plaintiff had alternative remedies available to him, including seeking injunctive or declaratory relief to challenge BOP policy affecting the provision of dental care). "Unlike the Bivens remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." Malesko, 534 U.S. at 74; see Caraballo, 2023 WL 3467185, at *8 (concluding that, as a special factor counseling hesitation against extending Bivens, the plaintiff could have sought injunctive relief as an alternative remedy to challenge and seek compliance with COVID-19 protocols at a federal detention center).

### ii. Separation of Powers Principle

"[T]he long tradition of judicial deference to the legislative and executive branch's expertise in prison management also counsels in favor of hesitation." Smith v. Garcia, 647 F. Supp. 3d 90, 99 (E.D.N.Y. 2022) (holding that the deference owed to the prison administrators in how they manage prison facilities constitutes "any factor counseling hesitation [on] extending [Bivens]"). As the Supreme Court recognized,

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

Turner v. Safley, 482 U.S. 78, 84-85 (1987); see Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in

16

their judgment are needed to preserve internal order and discipline and to maintain institutional security.") (citing Jones v. N.C. Prisoners' Lab. Union, Inc., 433 U.S. 119, 128 (1977), and Cruz v. Beto, 405 U.S. 319, 321 (1972)) (additional citations omitted). "Because 'it would be inappropriate for the court to imply a remedy for damages in an area that is uniquely within the province and professional expertise of corrections officials,' the [undersigned] concludes that the deference owed to prison administrators constitutes [another] special factor weighing against recognition of a Bivens remedy." Johnson v. Santiago, 624 F. Supp. 3d 295, 303 (E.D.N.Y. 2022) (quoting Negron v. United States, No. 19-CV-05442 (PMH), 2020 WL 5634304, at *8 (S.D.N.Y. Sept. 21, 2020)).

### iii. Congressional Silence in the Prison Litigation Reform Act

The Supreme Court has also indicated that Congress' passage of the Prison Litigation Reform Act ("PLRA") in 1995 "is an additional factor cautioning against the court's implication of a damages remedy." Ojo, 364 F. Supp. 3d at 176 n.9 (citing Ziglar, 582 U.S. at 148-49). "Some 15 years after Carlson was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." Ziglar, 582 U.S. at 148-49. Notably, the PLRA does not provide a damages remedy for federal inmates challenging federal prison conditions. See 42 U.S.C. § 1997e. The Ziglar Court "suggested that Congress' silence regarding the availability of a damages remedy may be particularly notable in a case like this, because 'high-level policies [are assumed to] attract the attention of Congress.'" Ojo, 364 F. Supp. 3d at 176 n.9 (quoting Ziglar, 582 U.S. at 144). Thus, this silence in the PLRA constitutes a "special factor that counsels against recognizing a

Bivens claim here."  Crespo, 2020 WL 7021658, at *6 (holding that congressional silence in the PLRA suggests a motivation that Congress does not want the Judiciary to interfere, "and that suggestion is enough to counsel hesitation"); see also Abdoulaye v. Cimaglia, No. 15-CV-4921 (PKC), 2018 WL 1890488, at *7 (S.D.N.Y. Mar. 30, 2018) ("The PLRA does not provide for a standalone damages remedy, suggesting that Congress chose not to extend the Carlson remedy to cases involving other types of prisoner mistreatment.") (citation and quotation marks omitted).

These considerations related to the alternative remedies available, the difficulties of prison administration, and the PLRA, lead to the conclusion that it is Congress, and not this Court, that should determine whether a damages remedy is available under the circumstances presented here.  Accordingly, as plaintiff's claim against Burdo and Fernandez is not cognizable under Bivens, it is recommended that plaintiff's Eighth Amendment Bivens claim against Burdo and Fernandez[7] be dismissed.

### B. Plaintiff's FTCA Claim

Defendants argue that "[t]he United States is entitled to summary judgment dismissing Plaintiff's FTCA claim because . . . the conduct alleged falls within the discretionary function exception to the FTCA[.]"  See Dkt. No. 98 at 4.

"The FTCA provides a cause of action against the United States for any 'negligent or wrongful act or omission of any employee of the Government while acting within the

---

[7] Defendants also argue that plaintiff has failed to establish that Fernandez was personally involved in the violation of his Eighth Amendment rights.  See Dkt. No. 98 at 18.  Because dismissal is recommended based on the Bivens analysis, the Court need not consider this alternative argument.  However, to the extent plaintiff argues Fernandez is personally involved due to "supervisor liability," the undersigned notes that such liability is inapplicable to Bivens suits.  Dkt. No. 105 at 7-8; see Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" King v. United States, No. 16-CV-2565 (LDH/RER), 2020 WL 1234236, at *3 (E.D.N.Y. Mar. 13, 2020) (quoting 28 U.S.C. § 1346(b)). "The liability of the federal government under the FTCA is generally determined by state law." Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996); see Malzof v. United States, 502 U.S. 301, 305 (1992). Accordingly, as the alleged conduct giving rise to plaintiff's claims occurred in New York, that state's substantive law applies. See generally Am. Compl.; see also Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) ("With respect to tort claims as to which the United States has waived its sovereign immunity, the FTCA requires the court to apply the substantive law of the place where the event occurred.") (citing 28 U.S.C. § 1346(b)).

### 1. Discretionary Function Exception

"The discretionary function exception precludes claims [under the FTCA] based on decisions at the policy or planning level," as well as those based on "day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." Fazi v. United States, 935 F.2d 535, 537–38 (2d Cir. 1991). For this exception to apply, "(1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000) (quoting United States v. Gaubert, 499 U.S. 315, 322–23 (1991), and Berkovitz v. United States, 486 U.S. 531,

536-37 (1988)).  "If the alleged actions fall within this exception, the claim fails for lack of subject matter jurisdiction."  <u>Morrison v. United States</u>, No. 17-CV-6779, 2019 WL 5295119, at *5 (S.D.N.Y. Oct. 18, 2019) (citing <u>Molchatsky v. United States</u>, 713 F.3d 159, 162 (2d Cir. 2013) (per curiam)).  In other words, "the federal government will not be liable under the FTCA if the 'discretionary function' exception applies."  <u>Morrison</u>, 2019 WL 5295119, at *5 (quoting 28 U.S.C. § 2680(a)).

As to the first prong, the Supreme Court has noted that, "[t]he requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'"  <u>Gaubert</u>, 499 U.S. at 322 (quoting <u>Berkovitz</u>, 486 U.S. at 536).  Under the second prong, the "focus of the inquiry is . . . on the nature of the actions taken and on whether they are susceptible to policy analysis."  <u>Gaubert</u>, 499 U.S. at 325.  "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations."  <u>Id.</u> at 324.  Nonetheless, this presumption may be rebutted by a showing that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."  <u>Id.</u> at 324–25.

Here, defendants argue that the discretionary function exception applies to Burdo's actions and bars plaintiff's claims.  <u>See</u> Dkt. No. 98 at 20-24.  Looking to the first prong of the discretionary function analysis, the BOP is charged with, among other things, "the management and regulation of all Federal penal and correctional institutions" and responsibility to "provide suitable quarters and provide for the safekeeping, care, and

subsistence of all persons charged with or convicted of offenses."  18 U.S.C. § 4042(a).

As indicated above, prison officials are afforded discretion in deciding how best to

execute this duty of care.  See discussion supra Subsection III.A.1.b.ii; see also Rhodes

v. Chapman, 452 U.S. 337, 350 n.14 (1981) ("[A] prison's internal security is peculiarly a

matter normally left to the discretion of prison administration.").  Specifically, as relevant

here, it is within the warden's discretion to determine the appropriate procedure for

providing OTC medications to indigent inmates.  See 28 C.F.R. § 549.31(c) ("To prevent

abuses of [medication], the Warden may impose restrictions on [indigent inmates]").

Contrary to some of plaintiff's contentions, see Dkt. No. 105 at 18, because 28 C.F.R.

§ 549.31(c) permits a level of employee discretion, defendants' alleged actions are

discretionary in nature.  See, e.g., Fernandini v. United States, No. 1:15-CV-3843

(GHW), 2019 WL 1033797, at *4 (S.D.N.Y. Mar. 5, 2019) ("[D]ecisions regarding the

best way to comply with [a] broad statutory mandate are discretionary in nature."); see

also Enigwe v. Zenk, No. 03-CV-854 (CBA), 2007 WL 2713849, at *8 (E.D.N.Y. Sept.

14, 2007) (noting that "in general decisions regarding the best way to safeguard

prisoners are discretionary in nature").  Therefore, the first prong is satisfied.

As to the second prong, given the above, defendants are afforded a "strong

presumption" that their conduct is grounded in public policy considerations.  Gaubert,

499 U.S. at 324.  Plaintiff has failed to rebut this presumption.  Specifically, plaintiff does

not show that "the challenged actions are not the kind of conduct that can be said to be

grounded in the policy of the regulatory regime."  Id. at 324–25; see Dkt. No. 105 at 18.

To the contrary, numerous courts have concluded that prison decisions concerning

different items distributed to inmates implicate policy considerations such as "safety,

general prison security, . . . and the effective use of limited resources[.]"  Ortiz v. United States, No. 01-CV-4665 (AKH), 2002 WL 1492115, at *4 (S.D.N.Y. July 11, 2002); see Ojo v. United States, No. 16-CV-4112 (MKB/LB), 2019 WL 3852391, at *9 (E.D.N.Y. Aug. 15, 2019) ("Numerous courts have found [that] decisions regarding prison management, inmate security, and the security of officers are policy considerations."), report and recommendation adopted, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019); see also Barone v. United States, No. 12-CV-4103, 2015 WL 10791889, at *18 (S.D.N.Y. Oct. 29, 2015) ("BOP decisions regarding prison management and maintenance typically are subject to numerous policy considerations."), report and recommendation adopted in part, 2016 WL 2658174 (S.D.N.Y. May 5, 2016), aff'd, 722 F. App'x 57 (2d Cir. 2018) (summary order).

Defendants required plaintiff "to retain and exchange empty [medication] bottles [in order to obtain his] OTC medication", Am. Compl. at 5, because they believed he "was hoarding medication that he received for free as an indigent inmate."  Dkt. No. 98 at 24.[8] As defendants argue, "[i]nmates may hoard and misuse medication, creating a health risk, or they may sell the medication, creating risks to health, security, and order."  Dkt. No. 98 at 23.  Thus, the policy implemented specific to plaintiff "was not so far outside the range of appropriate judgment that [it] can no longer be viewed as an exercise of

---

[8] Plaintiff claims that he had a roommate, and they kept all possessions, including OTC medication, on one shared table and the floor; therefore, it was "impossible to determine what belongs to who without asking."  Dkt. No. 105 at 15-16.  To the extent that plaintiff denies hoarding his medication, this allegation fails to establish that Burdo's and Fernandez's "actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."  Gaubert, 499 U.S. at 325; see Searles v. United States, No. 21-CV-6570 (RA), 2022 WL 2829912, at *4 (S.D.N.Y. July 20, 2022) ("Whether an act is 'grounded in considerations of public policy or susceptible to policy analysis' is evaluated based on 'the nature of the actions taken,' rather than 'the agent's subjective intent in exercising the discretion.'") (quoting Gaubert, 499 U.S. at 325), appeal dismissed (June 16, 2023); see also Morrison, 2019 WL 5295119, at *6 ("[S]ecurity . . . decisions at prisons—namely, what policies to enact and how to enforce them—generally fall within the discretionary function exception.").

discretion." <u>Chen v. United States</u>, No. 09-CV-2306 (ARR), 2011 WL 2039433, at *10 (E.D.N.Y. May 24, 2011) (citing <u>Enigwe</u>, 2007 WL 2713849, at *9), <u>aff'd</u>, 494 F. App'x 108 (2d Cir. 2012) (summary order).  Accordingly, the second prong is also satisfied.

In sum, "because both prongs of the discretionary function [ ] test have been satisfied, the Court lacks subject matter jurisdiction" over plaintiff's FTCA claim.[9]  <u>See</u> <u>Banks v. United States</u>, No. 10-CV-6613 (GBD/GWG), 2011 WL 4100454, at *15 (S.D.N.Y. Sept. 15, 2011) (dismissing the plaintiff's FTCA claim based on the discretionary function exemption), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011).  It is, therefore, recommended that plaintiff's FTCA claim against the United States be dismissed.


## IV. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 90) be **GRANTED**, and that plaintiff's claims against Veronica Fernandez, Kim Burdo, and the United States of America be **DISMISSED with prejudice**; and it is

**ORDERED**, that all parties be served a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

---

[9] Even if plaintiff could establish that this case falls outside the discretionary function exception, his FTCA claim would likely still fail.  Under New York law, "it is incumbent upon the plaintiff to present expert testimony in support of [his] allegations to establish a prima facie case of [medical] malpractice."  <u>Shields v. United States</u>, 446 F. App'x 325, 326 (2d Cir. 2011) (summary order) (citations omitted).  As defendants point out, plaintiff has failed to adduce expert medical testimony to support any medical malpractice claim.  <u>See</u> Dkt. No. 98 at 24-26; <u>see also</u> <u>Zeak v. United States</u>, No. 11-CV-4253 (KPF), 2014 WL 5324319, at *11 (S.D.N.Y. Oct. 20, 2014) ("If a plaintiff cannot establish a prima facie case without the benefit of expert testimony, and the plaintiff is unable to procure such testimony, then summary judgment is appropriate.") (citations and quotation marks omitted).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[10]

    Dated: January 19, 2024
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[10] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  See FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  See id. § 6(a)(1)(C).